# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3208

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Juan Manuel Ojeda-Estrada, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 9, 2009
Filed: August 20, 2009

_____

Before COLLOTON, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Juan Manuel Ojeda-Estrada appeals his conviction and sentence following a jury trial for conspiracy to distribute 500 grams or more of methamphetamine. We affirm the district court.[1]

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

## I.    BACKGROUND

Viewed in the light most favorable to the jury's verdict, United States v. Savatdy, 452 F.3d 974, 975 (8th Cir. 2006), the evidence at trial established the following things. The federal Drug Enforcement Agency became interested in Ojeda-Estrada and his associates following a December 2006 traffic stop in Nevada. The vehicle in which Ojeda-Estrada was a passenger was transporting $102,000 in cash, which was covered in coffee grounds and hidden in a secret compartment below the vehicle's radiator. Federal agents subsequently began monitoring the residence connected with the vehicle.

The vehicle that was stopped in Nevada and another vehicle belonging to Ojeda-Estrada were both registered to an address located at 1915 Buchanan Street in Minneapolis. Upon visiting that location, officers discovered that the house was abandoned and that the contents of the house were being kept in the garage. Officers searched the garage and found evidence of drug trafficking, as well as evidence connecting the contents of the garage to Ojeda-Estrada.

Based on items found during the search of the garage at Buchanan Street, officers began surveillance at a house on Vincent Avenue. Officers observed Ojeda-Estrada leave this residence and enter the passenger side of a gold Maxima. Officers followed the Maxima to a restaurant, and later to the Minneapolis-St. Paul airport. Ojeda-Estrada did not enter the airport, but instead stood outside on the sidewalk while another passenger in the Maxima took a bag out of the car and got into a blue pickup. Soon after, the Maxima, with the blue pickup following, exited the airport and both cars drove to a house at 6348 Starlite Boulevard in Fridley, Minnesota, a suburb on the north side of Minneapolis.

Officers conducted surveillance for several weeks at the Starlite Boulevard residence and found that Ojeda-Estrada's vehicle was parked at this location on

numerous occasions.  Officers also noticed a high volume of activity consistent with drug trafficking at the Starlite residence.  Eventually the officers conducted a traffic stop of the gold Maxima and found methamphetamine and a gun in the car.[2]  Based upon this traffic stop, officers applied for a warrant to search the Starlite Boulevard residence.  Ojeda-Estrada was present in a bedroom at the residence when the search warrant was executed.  The search of this residence uncovered various items commonly related to drug trafficking, including: a money counter, a box of ammunition which was connected to the gun found in the Maxima, a notebook with notations that appeared to be part of a drug-dealing activity log, a heat sealer and numerous used Ziploc bags (a random sample of which tested positive for methamphetamine),  another small baggie which contained 2.5 grams of methamphetamine, and $1000 in cash.  In the attic, officers found more methamphetamine, baggies, ammunition, scales, and dimethyl sulfone, which is a cutting agent used to increase the quantity of methamphetamine.  Officers also found Ojeda-Estrada's birth certificate in this residence, and located $920 on his person.  Conspicuously absent from the Starlite Boulevard residence was any food or utensils in the kitchen, and there was sparse furniture and clothing throughout the remainder of the house.  Finally, officers testified at trial about numerous cell phone contacts between Ojeda-Estrada and other members of the conspiracy.

Ojeda-Estrada testified on his own behalf at trial and attempted to distance himself from the above-described evidence.  Nonetheless, the jury found him guilty and found that he was responsible for over 500 grams of methamphetamine in the conspiracy.  Prior to sentencing, the probation office prepared the presentence investigation report (PSR).  The PSR placed Ojeda-Estrada's base offense level at 34, as he was responsible, for sentencing purposes, for a total of 176 grams of methamphetamine and almost 3 kilograms of cocaine.  The PSR found that Ojeda-Estrada was a career offender based on his 1994 conviction for

---

[2]Ojeda-Estrada was not in the Maxima during that traffic stop.

possession/purchase of cocaine and his 1998 conviction for transportation/sale of a controlled substance–both in California state court. As a result, Ojeda-Estrada's applicable federal sentencing guideline range was determined to be 360 months to life imprisonment, and Ojeda-Estrada was subject to a twenty-year statutory minimum.

Ojeda-Estrada objected to various portions of the PSR, including its finding that he was a career offender. In particular, he objected to the inclusion of his 1998 felony conviction under Section 11352(a) of the California Health and Safety Code for purposes of establishing his career offender status under Section 4B1.1 of the Guidelines. The government submitted a copy of Ojeda-Estrada's 1998 criminal complaint which charged that Ojeda-Estrada: "did unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, cocaine." The government also submitted a copy of the judgment which indicates Ojeda-Estrada pled guilty to and was convicted of this charge on December 16, 1998. Relying on United States v. Garcia-Medina, 497 F.3d 875 (8th Cir. 2007), the district court found Ojeda-Estrada was a career offender. The district court recognized "the 1998 criminal complaint against Mr. Estrada charges all the crimes listed in Section 11352(a) and it charges them in the conjunctive." The court went on to state, "there is no indication that Mr. Estrada clarified or qualified his plea in any way that would limit it to non-controlled substance offenses." The district court found Ojeda-Estrada's 1994 and 1998 drug convictions were felony controlled substance offenses as defined in Section 4B1.2(b) which qualified Ojeda-Estrada as a career offender. The court therefore found his guideline range was 360 months to life imprisonment, and sentenced Ojeda-Estrada to 360 months in prison.

## II.    DISCUSSION

### A.    Sufficiency

When reviewing the sufficiency of the evidence, we view the facts in the light most favorable to the verdict, and affirm if any rational jury could have found the defendant guilty beyond a reasonable doubt. United States v. Inman, 558 F.3d 742, 747 (8th Cir. 2009). The government points out that there is no record that Ojeda-Estrada made a motion for judgment of acquittal. In his reply brief, Ojeda-Estrada concedes the record is devoid of such a motion, but muses that the motion may have been made off the record, as it is routinely made in "every criminal trial." If no motion was made, we review for plain error. United States v. Milam, 494 F.3d 640, 643 (8th Cir. 2007). We have some concern with definitively stating that the motion was not made and reviewing for plain error. The trial transcript has been somewhat unusually labeled a "Trial Excerpt," and indeed, at the close of the defendant's evidence, there are gaps, surrounded by asterisks, with the following notation, "**(Trial excerpt concluded.)**" and after a short space, there is another "**(Excerpt from trial)**" notation. Further, the court has not been provided with a "trial excerpt" of the proceedings that occurred after closing arguments concluded, including the proceedings wherein the jury returned its verdict and any motions that may have been made at that time.

In view of these irregularities in the trial transcript, and both parties' lack of certainty about whether the motion was made pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and out of an abundance of caution, we apply the usual standard and review the sufficiency of the evidence as articulated in Inman. The indictment charged Ojeda-Estrada with conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. "To establish that a defendant conspired to distribute drugs . . . the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant

-5-

knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007) (quotation omitted). The existence of a conspiracy may be proved by direct or circumstantial evidence. United States v. Cain, 487 F.3d 1108, 1111 (8th Cir.), cert. denied, 128 S. Ct. 648 (2007). Mere presence, coupled with knowledge that someone else in the vicinity intends to sell drugs, is insufficient to establish membership in a conspiracy. United States v. Rolon-Ramos, 502 F.3d 750, 754 (8th Cir. 2007).

Viewed in the light most favorable to the verdict, the evidence showed Ojeda-Estrada was an active and willing participant in a methamphetamine trafficking conspiracy. He was in the car that transported $102,000 cash from Minnesota to Los Angeles, his vehicle was registered to a drug trafficking house on Buchanan Street, and this vehicle was frequently seen at, and Ojeda-Estrada was arrested at, a second drug trafficking house on Starlite Boulevard. During the search of the Starlite house where Ojeda-Estrada was arrested, officers found numerous items making it apparent that extensive drug trafficking was taking place there. And officers found Ojeda-Estrada's birth certificate in this residence. Cell phone evidence connected Ojeda-Estrada with other members of the conspiracy. A rational jury could have convicted Ojeda-Estrada of the conspiracy based upon the evidence presented at trial. Accordingly, the jury's verdict was supported by sufficient evidence.

### B.    Section 4B1.1 Predicate Offense

Ojeda-Estrada next challenges the district court's sentencing decision to treat him as a career offender for having two prior controlled substance offenses. We review de novo the district court's determination that Ojeda-Estrada was a career offender under Section 4B1.1 of the Guidelines. United States v. Aleman, 548 F.3d 1158, 1168 (8th Cir. 2008), cert. denied sub nom., Martinez-Menera v. United States, 129 S. Ct. 2756 (2009). The government bears the burden of proving by a

preponderance of the evidence that a prior offense qualifies Ojeda-Estrada for the career offender provisions. Garcia-Medina, 497 F.3d at 876.

Under the Guidelines, a defendant is treated as a career offender if he has two prior convictions for either a controlled substance offense or a crime of violence. U.S.S.G. § 4B1.1(a). A controlled substance offense is defined in the Guidelines as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

To determine if a prior conviction qualifies as a predicate controlled substance offense for purposes of the career offender provision, the sentencing court must first use the "formal categorical approach" the Supreme Court adopted in Taylor v. United States, 495 U.S. 575, 600 (1990). This approach "look[s] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. Nonetheless, Taylor recognized an exception to the formal "categorical approach" when a statute defines an offense more broadly than the generic enumerated offense. Id. at 602. In a case that falls under the exception, the sentencing court can look to "the indictment or information and jury instructions" to determine if the jury was "actually required . . . to find all the elements of [the] generic [offense]." Id. Where the defendant pleads guilty, the sentencing court may look to the plea agreement, to the defendant's admissions, and to the judgment. Shepard v. United States, 544 U.S. 13, 19-20 (2005). This exception is known as the "modified categorical approach."

Ojeda-Estrada's 1998 California conviction was for a crime which is not, categorically, a controlled substance offense for purposes of Section 4B1.1. California Health and Safety Section 11352(a) criminalizes the transportation of

drugs, even where it does not involve importing or exporting the drugs and even where there is no distribution. An abstract of judgment from the California court shows that Ojeda-Estrada pleaded guilty to this statute. Our task is to determine whether the government met its burden of proving that Ojeda-Estrada pleaded guilty to a Guidelines-defined "drug trafficking offense" by pleading guilty to the California statute. The charging document produced by the government at sentencing alleged that Ojeda-Estrada: "did unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, cocaine." As previously noted, the district court relied upon our decision in Garcia-Medina to find that Ojeda-Estrada's guilty plea to this charge contributed to his career offender calculation.

In Garcia-Medina, we considered whether a violation of California's Section 11352(a) was a drug trafficking offense for purposes of a sentencing enhancement to the crime of illegal reentry.[3] We acknowledged the California statute was overinclusive and the case involved a guilty plea. We therefore used Shepard's modified categorical approach. 497 F.3d at 877. Garcia-Medina admitted that he had pleaded guilty to two counts of Section 11352, but that he did not plead guilty to "special allegations." Counts one and two stated that Garcia-Medina: "did unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, HEROIN." Id. at 877-78. The special allegations to which Garcia-Medina did not plead guilty stated, "It is further alleged that in the commission of the

_____

[3]This is a different guideline than the one at issue in this case, but Ojeda-Estrada concedes that the language of the reentry enhancement is "strongly similar in all relevant respects" to the definitions at issue in 4B1.1.

above offense the defendant(s), RAMON GARCIA MEDINA, sold and offered to sell 14.25 grams and more of a substance containing heroin . . . ." Id. at 878.

We held that Garcia-Medina's guilty plea to counts 1 and 2 were sufficient to satisfy the government's burden of proving that Garcia-Medina had been previously convicted of a drug trafficking offense, even without the special allegations. Id. We reasoned that in California, a guilty plea admits every element of the offense charged, and that because the charge was written in the conjunctive, Garcia-Medina's plea effectively admitted guilt to the several listed offenses, many of which qualified as drug trafficking for purposes of the guideline enhancement. Id. Accordingly, Garcia-Medina's plea necessarily rested upon facts equating to the qualifying offense. Id.

Ojeda-Estrada argues that Garcia-Medina is not dispositive, because in that case, the court simply assumed that the defendant pleaded guilty to all of the acts described in the conjunctive, whereas in this case, the government has not met its burden of showing that the guilty plea was not more narrowly drawn. Ojeda-Estrada overstates the government's burden. As previously stated, the government must prove, by a preponderance of the evidence, that Ojeda-Estrada was previously convicted of a drug trafficking offense. To that end, the government produced at sentencing the abstract of judgment noting that Ojeda-Estrada pleaded guilty to count 2 of the California felony complaint, described above and also produced by the government. We find this is sufficient to dispatch the government's burden of proof. Ojeda-Estrada was charged, and pled guilty to all of the acts in the conjunctive. This has the same effect as a charging document which effectively narrows the overinclusive statute.

Like the district court, we can find nothing to distinguish the facts and procedures employed at sentencing in this case from what occurred in Garcia-Medina. The government proved by a preponderance of the evidence that Ojeda-Estrada pleaded guilty to a drug trafficking offense, and was not required to produce more of the state sentencing record in an effort to *disprove* Ojeda-Estrada's theory that the

guilty plea may have been more narrowly drawn.  See United States v. Vasquez-Garcia, 449 F.3d 870, 873 (8th Cir. 2006) (holding that the government need not produce additional documentation of the factual basis for a plea or admissions at the plea hearing where the charging document already narrowed the overinclusive statute).  Accordingly, the district court properly applied the career offender sentencing enhancement.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.[4]

_____

_____

[4]Ojeda-Estrada filed a pro se motion to supplement the appellate record with additional arguments, case citations, affidavits and other documents.  Our normal practice is to refuse pro se filings where the defendant is represented by counsel on appeal.  We see no reason to deviate from that procedure in this case.  Ojeda-Estrada was apparently not fully satisfied with his attorneys' efforts in this case, but he has another and more appropriate forum to raise such objections, a 28 U.S.C. § 2255 motion.  United States v. Hartstein, 557 F.3d 589, 591 (8th Cir. 2009).  Accordingly, we deny the motion to supplement the record.