# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3712

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Nebraska. |
| A. J. Kelly, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 12, 2010
Filed: November 22, 2010

_____

Before BYE, MELLOY, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

A jury convicted A.J. Kelly of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and Kelly was sentenced to 115 months' imprisonment followed by three years of supervised release. Kelly appeals his conviction on the ground there was insufficient evidence of his possession or control of a firearm. Kelly also challenges a special condition of his supervised release barring him from possessing any material which "contains nudity or that depicts or alludes to sexual activity or depicts sexual arousing material," arguing this condition is not reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a) and is overbroad in violation of his rights under the First Amendment. Although we reject Kelly's sufficiency-of-evidence argument and affirm his conviction, we find merit in

his arguments regarding the special condition and remand for further consideration of such condition and resentencing.

I

While executing a search warrant at Kelly's residence in Omaha, Nebraska, on April 21, 2008, law enforcement discovered a Colt .22 caliber pistol, some ammunition, and a 2007 receipt for the sale of ammunition, all wrapped in a towel and placed inside three plastic bags. The items were found on top of a basement closet high in the rafters. Also found in the basement was a Cricket telephone bill issued in Kelly's name. It is undisputed that the only two individuals who resided at the house were Kelly and his elderly ailing father.

Upon discovery of the gun, Sergeant Jonathan Waller of the Omaha Police Department read Kelly his Miranda rights and spoke to him after Kelly had agreed to waive them. According to Waller, Kelly admitted during the interview the pistol had been given to him by his grandfather seven years ago. Initially Kelly insisted he had not touched the gun for years, but when Waller confronted him with the ammunition sale receipt dated 2007, Kelly admitted to handling the gun a few times during the intervening years. Although Kelly conceded he was a convicted felon, Waller recalled, he did not believe the law prohibiting felons from possessing firearms applied to the family heirloom pistol given to him by his grandfather.

At trial, Kelly vehemently disputed Waller's account of their conversation. He denied telling Waller the pistol was his grandfather's gift or making any statements concerning the handling of the pistol on prior occasions. According to Kelly, he took responsibility for the gun only after Waller had threatened to charge Kelly's father if Kelly himself did not claim the gun. Speculating about the potential owner of the gun, Kelly noted his grandfather had lived at the house several years ago and three of his siblings, too, had access to the house during the relevant period.

Kelly was indicted on June 18, 2008, on two counts: felon in possession of firearm and a criminal forfeiture count under 18 U.S.C. § 924(d). He was convicted on the first count following a single-day jury trial; he was found guilty on the forfeiture count by the judge. On November 16, 2009, the district court sentenced him to 115 months' imprisonment, the upper point of his 92-115 months Guidelines range, and imposed a three-year term of supervised release, subject to several special conditions of supervision. Kelly is to serve his sentence consecutive to the 35 to 50 years' sentence he received on a state-court conviction for sexual assault of a child earlier that year. Apparently because Kelly had two sexual assault convictions, the district court restricted his access to sexually explicit materials through a broadly-phrased provision challenged on this appeal. Kelly timely appealed both his conviction and his sentence.

II

We begin with the easier question of whether Kelly's conviction was supported by sufficient evidence. "We review a challenge to the sufficiency of evidence de novo, considering the evidence in the light most favorable to the government." United States v. Gentry, 555 F.3d 659, 664 (8th Cir. 2009). Because it does not appear Kelly moved for judgment as a matter of law or for a new trial, the court could review the claim of insufficient evidence for plain error. United States v. Anderson, 570 F.3d 1025, 1029 (8th Cir. 2009); Boone v. Moore, 980 F.2d 539, 542 n.3 (8th Cir. 1992). However, because the record is not entirely clear about these procedural facts and because the government does not assert forfeiture of the issue, we choose to apply the usual standard for evaluating sufficiency-of-evidence claims. See United States v. Ojeda-Estrada, 577 F.3d 871, 875 (8th Cir. 2009) (choosing to overlook potential forfeiture of full review of the sufficiency-of-evidence claim "out of an abundance of caution" where both parties were uncertain as to whether Rule 29 motion was ever made and the transcript was unreliable due to certain irregularities). Thus, we must affirm the conviction if "any rational jury could have found the defendant guilty

-3-

beyond a reasonable doubt." Id. at 874 (citing United States v. Inman, 558 F.3d 742, 747 (8th Cir. 2009)).

"Felony possession of a firearm requires proof of three elements: (1) a prior felony conviction; (2) knowing possession of a firearm; and (3) an interstate nexus." United States v. Jones, 266 F.3d 804, 813 (8th Cir. 2001). Kelly lodges his sufficiency-of-evidence challenge only with respect to the second, knowing possession element. In support of his argument, he points to "inconclusive" results of the DNA testing and asserts that Sergeant Waller's testimony concerning Kelly's confession is unverified and unreliable.

We make short work of Kelly's argument. Whether well-founded or not, Kelly's doubts about Waller's credibility are not for us to resolve. "It is axiomatic that we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury." United States v. Montano, 506 F.3d 1128, 1133 (8th Cir. 2007) (internal quotation marks and citation omitted). As it was free to do, the jury in this case chose to credit the testimony of Sergeant Waller that Kelly had admitted to being the pistol's owner. See United States v. One Star, 979 F.2d 1319, 1321 (8th Cir. 1992). The jury was also entitled not to attach excessive significance to the "inconclusive" results of the DNA testing, especially where those results did not positively exclude Kelly, and indeed found Kelly's DNA in several locations on the pistol. Therefore, we conclude Kelly's conviction for being a felon in possession of a firearm was supported by sufficient evidence.

It leaves Kelly's second claim for relief – the argument that the district court exceeded its discretion in imposing special condition of supervision 15. The condition in question prohibits Kelly from

> possess[ing] [or] hav[ing] under his . . . control any material, legal or
> illegal, that contains nudity or that depicts or alludes to sexual activity

-4-

or depicts sexually arousing material.  This includes, but is not limited to, any material obtained through access to any computer, including a computer for employment purposes, or any other material linked to computer access or use.

Judgment at 5.

District courts have broad discretion in imposing conditions of supervised release, as long as each condition "1) is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a); 2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and 3) is consistent with any pertinent policy statements issued by the Sentencing Commission." United States v. Bender, 566 F.3d 748, 751 (8th Cir. 2009) (citing 18 U.S.C. § 3583(d) and United States v. Boston, 494 F.3d 660, 667 (8th Cir. 2007)) (internal quotation marks omitted).  In Kelly's view, the condition in question fails both the first and the second prong of the test.

We first address Kelly's argument as to special condition 15 not being reasonably related to § 3553(a) sentencing factors.  We review the condition for abuse of discretion.  United States v. Davies, 380 F.3d 329, 332 (8th Cir. 2004).  "A condition is reasonably related to the statutory factors if tailored to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medicinal, or other correctional needs."  United States v. Fenner, 600 F.3d 1014, 1026 (8th Cir. 2010) (internal quotation marks and citation omitted).  Courts can impose special conditions of supervised release not directly related to the offense for which the defendant is being sentenced where "the special conditions are related to another offense that the defendant previously committed."  United States v. Smart, 472 F.3d 556, 559 (8th Cir. 2006) (approving the imposition of sex-offender-related conditions as part of a sentence for felon in possession of a firearm where the defendant was previously

convicted of two sexual abuse offenses, was still on probation for one of them, and was sought on an arrest warrant for violating the conditions of probation). However, in crafting any special conditions, district courts must be careful to conduct an inquiry "on an individualized basis," looking at the specific facts of the defendant's criminal history and his particular offenses. United States v. Davis, 452 F.3d 991, 995 (8th Cir. 2006). Courts may not impose special conditions categorically on all individuals convicted of certain offenses. Id. Following this principle in United States v. Davis, we invalidated a condition effectively preventing the defendant from having unsupervised contact with his own daughter where there was no evidence the defendant was guilty of child abuse and the court imposed the condition solely on the basis of the defendant's underlying conviction for receipt of child pornography. Id. at 995-96. Similarly, in United States v. Bender, we disapproved a special condition prohibiting the defendant convicted of a sex crime from possessing sexually stimulating materials based on the district court's abstract belief that sex offenders "need to have a very tight rein" and have "[no] business reading a *Playboy* magazine." 566 F.3d at 752. Instead, we require a particularized showing of the need for the condition in each case.

Our review of the record in Kelly's case indicates the district court intended simply to "follow the special conditions of supervised release set out in the sentencing recommendation." The sentencing recommendation does not shed better light on the reasons for imposing special condition 15. The probation officer recommended this and other sex-offender-related conditions "because it is unclear what conditions his state sentence will impose on him." Although Kelly lodged specific objections to several conditions, including special condition 15, the court summarily overruled all objections, leaving for the probation office to decide whether any of the conditions were relevant or necessary at a later time.

The lack of *ad hoc* findings in this case violates the principle of individualized fact-finding mandated by Bender. No more granular than the district court's analysis

of the condition, the probation officer's rationale for the restriction was based solely on the character of Kelly's previous convictions – the reasoning prohibited by this court in <u>Davis</u>. Deficient in these respects, the condition fails the requirement of reasonable relationship to the sentencing factors.

Turning to the related contention that the proscription in question involves greater deprivation of liberty than is reasonably necessary and is overbroad in violation of Kelly's First Amendment rights, we review the district court's actions de novo. <u>United States v. Asalati</u>, 615 F.3d 1001, 1006 (8th Cir. 2010). Notwithstanding broad discretion of the court to fashion special conditions of supervised release, "we are particularly reluctant to uphold sweeping restrictions on important constitutional rights." <u>United States v. Crume</u>, 422 F.3d 728, 733 (8th Cir. 2005).

No one would dispute the well-established proposition that obscene speech is not covered by the First Amendment and may therefore be proscribed. <u>See</u> <u>Roth v. United States</u>, 354 U.S. 476, 485 (1957). The mercurial test for defining obscenity is set forth in <u>Miller v. California</u>:

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. 15, 24 (1973) (internal quotation marks and citations omitted).

It is likewise undisputed that "nudity alone is not enough to make material legally obscene." <u>Jenkins v. Georgia</u>, 418 U.S. 153, 161 (1974). "[W]here a ban could apply to any art form that employs nudity, . . . a defendant's exercise of First Amendment rights [is] unconstitutionally circumscribed or chilled." <u>United States</u>

v. Loy, 237 F.3d 251, 266 (3d Cir. 2000); see also United States v. Simons, 614 F.3d 475, 483 (8th Cir. 2010) (citing Erznoznik v. City of Jacksonville, 422 U.S. 205, 208-12 (1975)).  Guided by this principle, we recently invalidated a special condition of supervised release prohibiting the defendant, a registered sex offender, from possessing "any material, legal or illegal, that contains nudity or that depicts or alludes to sexual activity or depicts sexually arousing material."  Simons, 614 F.3d at 483. We were concerned with the breadth of such a provision, which, if applied mechanically, would prohibit the defendant from "viewing a biology textbook or purchasing an art book that contained pictures of the Venus de Milo, Michelangelo's David, or Botticelli's Birth of Venus, all of which depict nudity."  Id.  We also rejected the suggestion, urged by the government, that we could entrust the task of curing constitutional infirmity for each individual application of the condition to the probation office.  Id. at 485.

Our decision in Simons alone would be fatal to special condition 15.  The language of special provision 15 is virtually identical to the provision invalidated in that case.  Even so, we write separately to emphasize a more basic reason why the condition in question is overbroad.  While the focus of our opinion in Simons was on *depicting* sexual activity, *alluding* to sexual activity provides an even more persuasive ground for invalidating special provision 15, since it encompasses an even broader swath of materials.[1]

The verb "to allude" means "to refer casually or indirectly; make an allusion." Random House Webster's College Dictionary (2d ed. 1999).  The noun "allusion" is

---

[1]Additionally, assessing whether materials "allude" to sexual activity calls for the exercise of subjective judgment that makes the condition vulnerable to a void-for-vagueness challenge.  However, because Kelly did not pursue this argument on appeal, we will not address it here.  Cf. Caspari v. Bohlen, 510 U.S. 383, 389 (1994) (implying that courts do not have an obligation to raise sua sponte a constitutional issue that is not of jurisdictional significance).

in turn defined as "a passing or casual reference to something, either directly or implied; the act of alluding." Id. The proscription on materials alluding to sexual activity, then, comprises not only materials that depicting sexual activity –which, by and large, are limited to video, still-image, or sculpture formats – but also print materials, however benign and devoid of lascivious ethos, which make a passing reference to sexual activity.

Caught within the net cast by this phrase would be the Bible, with its "Thou shalt not commit adultery" directive, see Exodus 20:14, and other references to copulation contained in abundance in the Old Testament, see, e.g., Genesis 19:30-36 (a story of Lot's daughters "laying" with their father and getting pregnant as a result); Genesis 38:13-24 (a story of Tamar trading sex with Judah for ownership of a goat); Genesis 38:8-10 (the sin of Onan, who "spilt his seed upon the ground" rather than try to impregnate his brother's wife, as his brother asked him to); numerous works of classical literature – like Anne Frank's *The Diary of a Young Girl* – which Kelly could not even prescreen given the absence of sexual content rating system for books; and, most perversely, laws outlawing certain forms of sexual conduct and, for that matter, even this very opinion. The sweeping reach of this proscription is magnified by its strict-liability phrasing, which makes Kelly responsible for all materials in his possession, even if he has not read or looked at them. Worse, the rule would prevent Kelly from even possessing contraceptives, thereby threatening his constitutionally protected privacy right to decide "'whether to . . . beget a child.'" Carey v. Population Servs., Int.'l, 431 U.S. 678, 685 (1977) (quoting Eisenstadt v. Baird, 405 U.S. 438, 453 (1972)). These few examples demonstrate the condition imposed on Kelly has a "substantial range of applications to activity protected by the First Amendment." Turchick v. United States, 561 F.2d 719, 721 (8th Cir. 1977). Despite other "unprotected activities it legitimately prohibits," such condition is constitutionally overbroad. Id.

Recognizing the overbreadth problems posed by this phrasing, the government has previously conceded the point in a similar case. United States v. Cabot, 325 F.3d

384, 386 (2d Cir. 2003) (approving of the government's concession that a condition barring the defendant from possessing matter that "depicts or alludes to sexual activity" or "depicts minors under the age of eighteen" is too broad).  In this case, however, the government chose to resist Kelly's arguments by emphasizing the reprehensible nature of his misconduct.  See Red Br. at 12 ("The Special Condition may be extraordinary, but so is the defendant.").  But convicted individuals "do not forfeit all constitutional protections by reason of their conviction."  Bell v. Wolfish, 441 U.S. 520, 545 (1979).  Even for those imprisoned, "[t]here is no iron curtain drawn between the Constitution and the prisons of this country."  Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974).  Since a convicted individual does not shed his right to freedom of speech and religion under the First and Fourteenth Amendments, Bell, 441 U.S. at 545 (citing Pell v. Procunier, 417 U.S. 817 (1974); Cruz v. Beto, 405 U.S. 319 (1972); Cooper v. Pate, 378 U.S. 546 (1964)), the government's attempt to rescue the condition is unavailing.

III

For these reasons, we affirm Kelly's conviction but vacate special condition 15 and remand to the district court for further proceedings consistent with this opinion.

SHEPHERD, Circuit Judge, concurring in part, dissenting in part, and concurring in the judgment.

I am pleased to concur with the majority's decision holding (1) that there was sufficient evidence to support Kelly's conviction for possession or control of a firearm and (2) that the district court failed to make an individualized showing of the need for special condition 15 in this case.  Further, I agree with the majority's action of affirming the conviction but vacating special condition 15 and remanding to the district court.

-10-

I dissent from the majority's extended discussion as to the overly broad nature of special condition 15 as our decision in <u>United States v. Simons</u>, 614 F.3d 475 (8th Cir. 2010), alone, is sufficient to invalidate the special condition.

_____