# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1421

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United |
| v. | * | States District Court for |
| | * | the District of Nebraska. |
| A. J. Kelly, | * | |
| | * | |
| Appellant, | * | |
| | * | |

———————

Submitted: November 17, 2011
Filed: May 7, 2012

———————

Before RILEY, Chief Judge, BEAM, and BYE, Circuit Judges.

———————

BEAM, Circuit Judge.

After a jury convicted A. J. Kelly of being a felon in possession of a firearm, the district court[1] sentenced Kelly to 115 months' imprisonment and 36 months' supervised release. As part of Kelly's supervised release, the district court imposed several special conditions. Kelly challenged one of these conditions, which concerned possession of materials containing nudity or depicting or alluding to sexual activity.

———————————

[1]The Honorable Laurie Smith Camp, who became Chief Judge of the United States District Court for the District of Nebraska on December 1, 2011.

United States v. Kelly, 625 F.3d 516, 517 (8th Cir. 2010).  Finding merit in Kelly's challenge, a panel from this circuit remanded for re-sentencing, id. at 517, and the district court amended the special condition.  Kelly now appeals the amended special condition, and we affirm.

## I.     BACKGROUND

On April 21, 2008, police officers executed a search warrant on Kelly's home in Omaha, Nebraska.  During the search, officers discovered a .22 caliber firearm and ammunition.  Kelly was charged with and found guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The district court sentenced Kelly to 115 months' imprisonment and 36 months' supervised release.   The district court imposed several special conditions that governed Kelly's supervised release.

Special condition fifteen provided, "The Defendant shall neither possess nor have under his/her control any material, legal or illegal, that contains nudity or that depicts or alludes to sexual activity or depicts sexually arousing material."  Kelly challenged this special condition, and a panel from this circuit vacated and remanded for re-sentencing.  Kelly, 625 F.3d at 522.  In reaching its conclusion, the panel determined that the district court had failed to support condition fifteen with individualized findings and the condition was overbroad.  Id. at 520-21.

On remand, the district court re-sentenced Kelly and amended special condition fifteen.  The amended condition provided, "The Defendant shall neither possess nor have under his control any material, legal or illegal, that contains child pornography, or photographic depictions of child nudity or of children engaged in any sexual activity."   To support this condition, the district court made the following individualized findings:

Well, and I will find for the record based upon the defendant's criminal history, that he is a sexual predator, that he is predisposed to exploiting children sexually, and that if he is in possession of materials that contain photographic depictions of nude children or children engaged in sexual activity, that would be contrary to his rehabilitation. And it would also be indicative that he is pursuing a course of predatory activity again and would be cause for the probation office to be concerned, take action and perhaps get him either into counseling or some kind of programming to deal with this issue. So, that's the amendment we'll do. And we will see how that works.

\* \* \*

So this defendant has an issue where he is not only a danger to society and a danger to children, but he is in need of rehabilitation. And I think it is in his best interests in terms of his rehabilitation that he not be viewing photographs of nude children and that he not be viewing depictions of children engaged in sexual activity. So, it is the rehabilitation aspect that I think is important in supervised release that warrants a condition like this.

In its findings, the court referenced a prior offense where Kelly was convicted of first-degree sexual assault of a child. The district court highlighted the basic facts of the underlying offense at the sentencing hearing: "The defendant does have a history of sexual assault, sexual abuse, particularly abuse of his 12-year-old stepdaughter or daughter of a girlfriend . . . who was impregnated." Accordingly, over Kelly's objection, the district court imposed special condition fifteen as amended. Kelly now appeals special condition fifteen.

## II.    DISCUSSION

The sole issue on this appeal is whether special condition fifteen is unconstitutionally overbroad.[2] When a defendant raises a proper objection in district court, we generally review the terms and conditions of supervised release for abuse of discretion. United States v. Smith, 655 F.3d 839, 845 (8th Cir. 2011). However, we are "particularly reluctant to uphold sweeping restrictions on important constitutional rights and appl[y] de novo review to such conditions." Id. (internal quotation omitted).

According to Kelly, special condition fifteen is overbroad and thus violates his First Amendment rights. Specifically, Kelly asserts that the special condition violates the First Amendment because it goes beyond prohibiting unprotected speech, such as child pornography, and also prohibits him from possessing legal photographic depictions of child nudity, such as Raphael's "Madonna with the Christ Child." We disagree and find the special condition supported by individualized findings and sufficiently narrow in light of those findings.

For the sake of argument, we begin with the assumption that Kelly has a "First Amendment interest in viewing and possessing" photographic depictions of child nudity. Osborne v. Ohio, 495 U.S. 103, 108 (1990). Having this interest, convicted individuals "do not forfeit all constitutional protections by reason of their conviction." Bell v. Wolfish, 441 U.S. 520, 545 (1979). However, merely retaining constitutional

---

[2]In a pro se letter that appears in the appellate record, Kelly also seeks review of his conviction. "[W]e typically do not consider pro se submissions when an appellant is represented by counsel." United States v. Cheney, 571 F.3d 764, 767 n.3 (8th Cir. 2009). Given that Kelly was represented by counsel and offers no specific claim of error in his pro se submission, we see no reason to depart from our general rule in this case.

-4-

rights "does not mean that these rights are not subject to restrictions and limitations." Id.; see also Farrell v. Burke, 449 F.3d 470, 497 (2d Cir. 2006) (noting "that the First Amendment rights of parolees are circumscribed"); United States v. Ritter, 118 F.3d 502, 504 (6th Cir. 1997) ("[s]upervisory conditions that implicate fundamental rights such as freedom of speech and freedom of association are subject to careful review, but if primarily designed to meet the ends of rehabilitation and protection of the public, they are generally upheld"). Ultimately, special condition fifteen "is only unconstitutionally overbroad if its overbreadth is real and substantial in relation to its plainly legitimate sweep." United States v. Thompson, 653 F.3d 688, 695 (8th Cir. 2011).

To avoid "sweeping restrictions on important constitutional rights[,]" statutory mandates guide district courts when imposing special conditions. United States v. Mayo, 642 F.3d 628, 631 (8th Cir. 2011) (per curiam). First, the special condition must be reasonably related to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical or other correctional needs. United States v. Forde, 664 F.3d 1219, 1222 (8th Cir. 2012). "Second, the conditions must involve[ ] no greater deprivation of liberty than is reasonably necessary to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant's correctional needs." United States v. Simons, 614 F.3d 475, 479 (8th Cir. 2010) (alteration in original) (quotation and internal quotation omitted). Finally, the special condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3). To ensure these statutory mandates are followed, a "district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record." Forde, 664 F.3d at 1222 (quotation omitted).

-5-

Although we have expressed concerns about imposing broad prohibitions, special conditions that prohibit the possession of pornography–even legal pornographic materials–are not unusual. See United States v. Wiedower, 634 F.3d 490, 496 (8th Cir. 2011). Indeed, in a line of cases we have found it appropriate for a district court to place outright bans on pornography. See, e.g., id. at 492, 497 (reviewing for plain error and allowing ban on any "form of media containing pornographic images"); United States v. Demers, 634 F.3d 982, 985-86 (8th Cir. 2011) (per curiam) (determining that condition banning "pornographic materials of any type" was not overly restrictive under the First Amendment in light of the defendant's sex offenses); United States v. Boston, 494 F.3d 660, 667, 668 (8th Cir. 2007) (determining ban on "any form of pornography" not overly broad); United States v. Ristine, 335 F.3d 692, 694 (8th Cir. 2003) (reviewing for plain error and determining ban on "any pornographic materials" not overly broad).

Yet, we have rejected prohibitions that "could apply to any art form that employs nudity." Kelly, 625 F.3d at 521 (quotation omitted). For example, in Simons, the district court imposed a condition that prohibited the defendant from possessing "any material, legal or illegal, that contains nudity or that depicts or alludes to sexual activity or depicts sexually arousing material." 614 F.3d at 483. Finding the condition overbroad, we recognized that the condition prohibited the defendant from "viewing a biology textbook or purchasing an art book that contained pictures of the Venus de Milo, Michelangelo's David, or Botticelli's Birth of Venus, all of which depict nudity." Id. In Kelly, the predecessor to the present appeal, we invalidated special condition fifteen as the district court failed to make individualized findings, and the special condition was "virtually identical to the provision invalidated in [Simons]." 625 F.3d at 520-21.

The present case lies somewhere between the pornography and nudity lines of authority. On one hand, although the definition of pornography is elusive, it seems

to represent something more than mere child nudity. See Simons, 614 F.3d at 484; see also United States v. Johnson, 639 F.3d 433, 439 (8th Cir. 2011) (attempting to describe "mere nudity"). On the other hand, we are not dealing with a special condition as restrictive as that in Simons or Kelly, because the challenged clause is limited to photographic depictions of *child* nudity. Notably, the challenged clause is not so restrictive that it "could apply to *any* art form that employs nudity." Kelly, 625 F.3d at 521 (emphasis added). Indeed, the provision is silent on adult nudity or even legal adult pornography. Moreover, the class of prohibited materials covered by the condition is relatively narrow, as Kelly is only prohibited from possessing photographic depictions. Cf. Kelly, 625 F.3d at 517 (vacating special condition that bars possession of *any* material containing nudity); Simons, 614 F.3d at 483 (rejecting condition that prohibits "*any* material, legal or illegal, that contains nudity" (emphasis added)).

Not only is the present condition less restrictive than the conditions we have rejected in the past, "[o]ur prior case law limits the district court's discretion only insofar as the court imposes limitations on the basis of pure speculation or assumptions unrelated to the rehabilitative process." United States v. Kreitinger, 576 F.3d 500, 506 (8th Cir. 2009) (alteration in original) (quotations omitted). And "[w]hen a defendant has demonstrated a sexual interest in children, a ban on the possession of child pornography often serves to rehabilitate the defendant, to protect children, and to deter future activity." Thompson, 653 F.3d at 694.

Here, the district court made a specific finding that Kelly is predisposed to exploiting children sexually and that viewing photographic depictions of child nudity would undermine his rehabilitative process. Given the district court's individual findings concerning Kelly's relatively recent predatory behavior and focus on rehabilitation, we do not view the district court's decision to ban photographic depictions of child nudity as being based on "pure speculation or assumptions

unrelated to the rehabilitative process." <u>Kreitinger</u>, 576 F.3d at 506. To a great extent, we rely on the experience and "judicial common sense" of a sentencing judge when imposing special conditions, <u>Forde</u>, 664 F.3d at 1224 (quotation omitted), and we do not require "a direct connection" between a defendant's past history and a special condition, <u>United States v. Poitra</u>, 648 F.3d 884, 890 (8th Cir. 2011). Therefore, in light of the district court's individualized findings, we do not find that the special condition's "overbreadth is real and substantial in relation to its plainly legitimate sweep." <u>Thompson</u>, 653 F.3d at 695. Accordingly, the district court did not err in imposing special condition fifteen.

## III. CONCLUSION

We affirm the sentence of the district court.

BEAM, Circuit Judge, specially concurring.

I write separately in support of the sentencing judge's thoughtful and well-reasoned "special condition of supervised release" at issue in this appeal and to respectfully, but firmly, reject the dissent's critical analysis of the sentencing court's judgment in that regard. A single phrase within the district court's work product is ultimately involved.

I commence with a diagram highlighting the substantive portions of the wordage at issue–"The Defendant shall neither possess nor have under his control any material, legal or illegal, that contains [(1)] child pornography, or [(2)] photographic depictions of [(a)] child nudity or of [(b)] children engaged in any sexual activity." Because the dissent purports to be "trouble[d] . . . on so many levels" by the district court's ruling, it is not easy to identify the depth and breadth of its trepidation. Commonsense and the dissent's extensive emanations seem to indicate, however, that

-8-

the source of the dissent's angst is found among only a few words within the special condition–The Defendant shall neither possess nor have under his control any *legal* material that contains photographic depictions of child nudity.

By way of example, the dissent refers specifically to Raphael's "Madonna with the Christ Child," Raphael's "Saint John the Baptist," Bouguereau's "Birth of Venus," and the vintage Coppertone baby ad. My conclusion as to source emerges from the belief that the dissent does not (or at least should not) object to this convicted felon and acknowledged sexual predator being prohibited from receipt and possession of illegal material of any kind or of "child pornography." See 18 U.S.C. § 2256(1), 8(A)-(C) (defining child pornography as enumerated materials containing minors under the age of eighteen years); see also Black's Law Dictionary 1279 (9th ed. 2009) (defining child pornography as "[m]aterial depicting a person under the age of 18 engaged in sexual activity"). Indeed, such pornography possession, depending upon applicable statutory elements, is usually a federal crime and its intrinsic expression is ordinarily not protected by the First Amendment. Likewise, it seems counterintuitive to believe that the dissent supports possession and control of photographic depictions of children engaged in sexual activity, at least by this particular offender.

Thus, I turn to the single limiting phrase presumably at issue. To begin, I find no precedent, and the dissenting judge cites none, that supports the dissent's argument, post at 14-15, that because a limitation focuses upon only one aspect of an issue, all limitations on the issue must be banned. Such an idea is particularly pernicious when child nudity and sexual predation directed at pre-pubescent or barely post-pubescent children may be intertwined in a given situation. The dissent's approach would apparently permit a pedophile to view photographic depictions of child nudity without restraint because limitations on viewing "a toddler" bathing and other similar non-photographic exposure to child nudity are not also prohibited.

Next, and of even more importance, the dissent's evaluation of the harmlessness of the possession of *legal* photographic depictions of child[3] nudity by a sex offender of any stripe is not widely shared. Indeed, as with most matters of this kind there is substantial reasoned disagreement. Some, if not many, observers believe that even pre-pubescent depictions are a serious problem among a range of sex offenders, possibly even those with Mr. Kelly's *known* propensities. A pedophile may derive sexual satisfaction from innocuous situations, publications, or places. Duane L. Dobbert, Halting the Sexual Predator Among Us: Preventing Attack, Rape, and Lust Homicide 66 (2004). To this end, a pedophile may derive sexual gratification from a department store catalog. Id. And, seemingly, there is no bright-line rule in the pre- and post-pubertal process that highlights the boundaries of sexual interest by various sexual predators. See Ray Blanchard et al., Pedophilia, Hebephilia, and the DSM-V, 38 Arch. of Sex. Behav. 335, 336, 348 (2009). Thus, I reject the dissent's notion that expert testimony was needed to establish that Mr. Kelly will or will not reoffend if exposed to depictions of nude children. See United States v. Kerr, 472 F.3d 517, 521 (8th Cir. 2006). Given the discretion afforded a district court, I see no error in exercising prudence within constitutional bounds. See United States v. Wiedower, 634 F.3d 490, 497 (8th Cir. 2011) (allowing prohibition of both child and adult pornography, even though the defendant's offenses only related to child pornography). And, a district court may depend upon a wide range of information in its sentence decisionmaking, see United States v. Schlosser, 558 F.3d 736, 740 (8th Cir. 2009), and need not explain its entire thought process, see United States v. McGlothen, 556 F.3d 698, 703 (8th Cir. 2009). As long as it is apparent that the district court "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own

---

[3]"At common law, [a child is] a person who has not reached the age of 14." Black's Law Dictionary 271 (9th ed. 2009); see also United States v. Freeman, 808 F.2d 1290, 1292 (8th Cir. 1987) (highlighting difference between federal statute defining child as someone under eighteen years of age and state statute defining child as someone under sixteen years of age).

legal decisionmaking authority," the district court has fulfilled its duties. Id. (alterations in original) (quotation omitted).

Finally, as with all portions of the sentencing exercise, a sentencing court that operates within the sentencing guidelines and within its institutional strengths is accorded deferential abuse of discretion in formulating conditions of supervised release. Kimbrough v. United States, 552 U.S. 85, 109 (2007).

The district court was well within its ample discretion in fashioning this particular requirement.

BYE, Circuit Judge, dissenting.

Before imposing a special condition of supervised release, a district court must ensure the special condition "'involve[s] no greater deprivation of liberty than is reasonably necessary' to advance deterrence, the protection of the public from future crimes of the defendant, and the defendant's correctional needs." United States v. Crume, 422 F.3d 728, 733 (8th Cir. 2005) (quoting 18 U.S.C. § 3583(d)(2) and citing §§ 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)). The imposition of a special condition of supervised release also requires the district court to "'make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements.'" United States v. Thompson, 653 F.3d 688, 691 (8th Cir. 2011) (quoting United States v. Wiedower, 634 F.3d 490, 493 (8th Cir. 2011)). Our court is "'particularly reluctant to uphold sweeping restrictions on important constitutional rights'" such as the First Amendment rights involved here. United States v. Kelly, 625 F.3d 516, 520 (8th Cir. 2010) (quoting Crume, 422 F.3d at 733). The prohibition on A.J. Kelly's right to possess legal photographic depictions of child nudity clearly does not satisfy any of these requirements. I therefore respectfully dissent.

-11-

The district court's prohibition on legal material protected by the First Amendment, and our approval of the district court's action, troubles me on so many levels it becomes difficult to know where to begin. Let me start by diffusing what I believe may be a thoughtless, knee-jerk reaction to a prohibition on material depicting "child nudity" without full consideration of how vastly different in scope and kind the prohibition becomes when one adds the single word "legal" to the prohibition – the only aspect of the special condition Kelly challenges.[4]

Legal photographic depictions of child nudity include the photographs of prepubescent children enjoying a bath undoubtedly taped to grandparents' refrigerators throughout this country, photographs of newborn infants proudly displayed by parents on office desks or included in Christmas cards and birth announcements to friends and relatives, photographs of classical works of art such as Raphael's "Madonna with the Christ Child," Raphael's "Saint John the Baptist," or Bouguereau's "Birth of Venus," as well as photographs of images such as the vintage Coppertone baby ad.

The class of material depicting "legal" child nudity must, by necessity, be completely innocuous and wholly lacking in any prurient interest for it to be considered "legal," otherwise it would inevitably fall into the category of illegal child pornography. I dare say the class of material depicting legal child nudity necessarily excludes most (if not all) photographic depictions of nude post-pubescent females.

Notwithstanding the inherently innocent nature of this category of material protected by the First Amendment, a fact which seems most obvious to me while apparently escaping my colleagues, the majority places the prohibition at issue in this case somewhere between a permissible restriction on a defendant possessing adult

---

[4]Because the single phrase of the district court's special condition prohibiting Kelly from possessing legal child nudity is the only issue before us, the concurrence's discussion of other aspects of the special condition is wholly irrelevant.

pornography, and an impermissible restriction on a defendant's right to possess biology textbooks or art books depicting adult nudity. See Ante at 6-7. I am dismayed by the majority's comparison of the photograph of a newborn baby to adult pornography, much less the suggestion that photographs I may possess of my children and grandchildren as infants and toddlers enjoy less First Amendment protection than a biology textbook depicting adult nudity.

A district court may not categorically impose particular special conditions on certain types of offenders, such as sexual offenders. Kelly, 625 F.3d at 520. "Instead, we require a particularized showing of the need for the condition in each case." Id. Despite the majority's conclusory assertions to the contrary, there is no particularized showing in this case of the need to prohibit Kelly from possessing legal depictions of child nudity which (I cannot strongly emphasize enough) must necessarily be lacking in any prurient interest to be considered legal.

Kelly's criminal history shows his sexual predatory tendencies are limited to post-pubescent females. When he was nineteen years old, he sexually assaulted a former girlfriend who was eighteen years old. Presentence Investigation Report (PSR) at ¶ 40. When he was thirty years old, he was charged with sexually assaulting his girlfriend's post-pubescent daughter, a charge proven by the fact that Kelly impregnated the girl (the same fact which also clearly establishes she was post-pubescent). Id. at ¶ 44. There is nothing in Kelly's criminal history, or in the district court record, which shows Kelly has any sexual interest whatsoever in pre-pubescent children, or that his sexual interest in females mature enough to be menstruating will somehow be triggered by the photograph of a newborn male or a classical work of art depicting nude cherubs.

While I can acknowledge some defendants' aberrant sexual proclivities may be triggered by the sight of a newborn's birth announcement, the district court's ban on

-13-

Kelly's right to possess such a photograph is based on "pure speculation or assumptions unrelated to the rehabilitative process." United States v. Kreitinger, 576 F.3d 500, 506 (8th Cir. 2009) (internal quotation marks and citation omitted). There is no testimony from a mental health expert, or any other competent evidence in this record, to indicate Kelly will be more likely to sexually assault another post-pubescent female teenager if allowed to possess, for example, a photograph of his infant son taking a bath. Cf. United States v. Bender, 566 F.3d 748, 752 (8th Cir. 2009) (reversing a district court's ban on a defendant's ban on the possession of any sexually stimulating materials based on nothing more than the district court's belief "sex offenders need to have a very tight rein [and have no] . . . business looking at *Playboy* magazine"). Common sense, judicial or mostly otherwise, does not support such a connection. The rational, the thoughtful, the objective, can read the majority's decision and judge for themselves whether it is supported by common sense. I, myself, can not believe the level of dysfunction necessary to make a grown man desire a post-pubescent female simply by viewing the photograph of a newborn infant, can be gauged by the application of common sense without requiring input from a mental health expert to explain such a bizarre and aberrant thought process.

To make matters worse, the majority defends this special condition by relying upon one of the condition's arbitrary shortcomings, the fact that Kelly is only prohibited from possessing *photographic* depictions of legal child nudity. Assuming for a moment common sense alone *was* enough for us to divine the inner workings of Kelly's mind, and we knew without the assistance of a psychologist that viewing the image of a toddler in a bathtub would trigger in Kelly the urge to sexually molest a seventeen year-old post-pubescent female, I do not see how limiting the prohibition to photographic depictions would advance the goal of deterrence or serve Kelly's correctional needs. For if Kelly's aberrance is truly triggered by such images, the prohibition should include his possession of any form of such an image, including print materials, videotapes, or digital images found on the internet.

-14-

Under the district court's condition, Kelly can watch the birth of a newborn infant on a television show such as *Grey's Anatomy*, but he is subject to revocation of his supervised release if he takes a photograph of the same image while watching the show. He can possess a poster of the Coppertone baby ad, but he cannot possess a photograph of the same poster. Kelly can possess a DVD of the motion picture "THREE MEN AND A BABY" starring Tom Selleck, but be sent back to prison for taking a photo of the DVD cover. He can find digital images of Raphael's "Madonna with the Christ Child" on the internet and view them on his cell phone, but he cannot carry a photograph of the same image in his wallet. Kelly can possess a print copy of a diaper advertisement depicting a topless female toddler in a parenting magazine, but cannot possess a photograph of the same image. How do we explain such irrational and bizarre distinctions to a discerning and skeptical public?

The majority's decision to affirm the district court not only erodes our applicable criminal and constitutional precedents, but it further exposes our court to the just criticism of a public which already is skeptical of the judicial system. Criminal defendants, as well as the general public, expect that "[t]he punishment should fit the crime." DuBose v. State of Minn., 893 F.2d 169, 172 (8th Cir. 1990) (Arnold, J., concurring in part and dissenting in part). What message do we communicate about our own judgment when we announce a federal firearm offender can be sent back to prison because he possessed a photograph of his newborn son, or because Kelly's probation officer just happened to conduct a home visit on the same day a relative mailed him a birth announcement of a niece or nephew?

I, for one, expect more. I expect probation officers in the federal system to consider carefully the special conditions of supervised release they recommend and ensure such conditions are rationally connected and narrowly tailored to a defendant's specific correctional needs, without creating absurd and illogical pitfalls and traps for defendants on supervised release. I expect the same of district courts when they

consider whether to adopt those recommendations. I expect the same of the lawyers employed by the Department of Justice when defending such conditions in our courts. I also expect our appellate courts to apply the law rationally and even-handedly, and with the exercise of common sense, when determining whether such conditions comport with constitutional limits.

The majority's decision to affirm the district court reflects a failure of our justice system on all of these levels. Because I cannot sit idly by and remain silent in the wake of such failures, I must respectfully dissent.

_____