# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1881

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Jason D. Inman, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 2008
Filed: March 5, 2009

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and ERICKSON,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Jason D. Inman was indicted on three counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Before trial, he moved to suppress evidence seized during an investigation by the government. The district

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

court[2] denied the motion, and a jury convicted Inman on all three counts. Inman moved for a judgment of acquittal, arguing that there was insufficient evidence to prove the jurisdictional element of the offense as charged to the jury. The district court denied the motion, and eventually sentenced Inman to 110 months' imprisonment. Inman appeals the denial of the motion to suppress and the motion for judgment of acquittal. We affirm.

I.

Inman was employed as a paramedic by the Ste. Genevieve County Ambulance District in Missouri. On Saturday, March 11, 2006, Inman was away from the ambulance station responding to a call for service. Two other employees of the ambulance service, Captain Brian Watson and Bill Becker, were at the station having a conversation about Inman's new girlfriend. Watson could not remember her name, so he opened Inman's personal laptop to see if she was included on Inman's instant-messenger list. The laptop was turned on and sitting on the kitchen table in the station.

Watson did not find the name of Inman's girlfriend, but as he was about to close the computer lid, he noticed icons on the computer screen with file names that suggested child pornography, namely, "pedoMarie," "10-year-old prostitute," and "Parents teach eight, nine, and 10-year-olds sex." Watson and Becker clicked on the icons, viewed three videos accessed through the icons, and observed minors engaging in sexual acts.

Watson then called a friend, a local police chief, to ask for advice. After Watson presented a "theoretical" story describing what he and Becker had found, the

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, adopting the Report and Recommendation of the Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri.

friend suggested that they report the incident. Watson called Kendall Schrum, the ambulance district administrator, who told Watson not to confront Inman, and that an investigation would ensue after the weekend.

On the following Monday, Watson reported what he had found to Lieutenant Jason Schott of the Ste. Genevieve County Sheriff's Department. Using the information that Watson provided, Schott obtained a search warrant for Inman's computer. Inman also consented to a search of his house. The police found child pornography on the hard drive of Inman's computer and on DVDs found in Inman's house.

A grand jury charged Inman with three counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). He moved to suppress evidence seized from his home and computer on the ground that it was the fruit of an illegal search of his computer by Watson. Inman argued that Watson's actions, as a government employee and Inman's supervisor, were regulated by the Fourth Amendment, and that Watson violated Inman's rights by searching the computer without a warrant.

After a hearing, a magistrate judge recommended that the motion be denied, determining that Watson was not Inman's supervisor at the time, and that Watson and Becker were acting as private individuals, not government agents, when they found the child pornography on the computer. The district court, conducting a *de novo* review, adopted the facts found by the magistrate judge and denied the motion to suppress. The district court found that "in opening the Defendant's laptop and viewing the files contained within it, Becker and Watson were not acting as government agents but in their personal capacities[;] therefore, there was no government action that could result in a violation of the Fourth Amendment." With the disputed evidence then presented at trial, a jury convicted Inman on all three counts.

II.

A.

Inman first challenges the district court's denial of his motion to suppress evidence. We review the district court's findings of fact for clear error, and review *de novo* whether the searches violated the Fourth Amendment. *Ornelas v. United States*, 517 U.S. 690, 698-99 (1996); *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007). Because this case proceeded to trial, we examine the entire record, not merely the evidence adduced at the suppression hearing, in considering the denial of Inman's motion to suppress. *United States v. Anderson*, 339 F.3d 720, 723 (8th Cir. 2003).

Inman argues that the district court erred because Watson's conduct in searching Inman's computer was subject to the Fourth Amendment, and that Watson unlawfully searched the computer without a warrant. Inman contends that although Watson initially may have opened the computer for purely personal reasons, his review of icons on the computer was undertaken as a government agent. He argues that when Watson saw the names of the files on the computer, he was concerned that the files might contain "something illegal," and therefore was acting in his capacity as Inman's supervisor when he clicked on the files containing child pornography.

In considering whether conduct of a private citizen is subject to the Fourth Amendment, our court considers "whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request." *United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004). When the actor alleged to have conducted an unlawful search is a government employee, the second factor is particularly important. In a leading decision, for example, the Ninth Circuit concluded that "for the conduct of a

governmental party to be subject to the fourth amendment, the governmental party engaging in that conduct must have acted with the intent to assist the government in its investigatory or administrative purposes and not for an independent purpose." *United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990).

The district court found that when Watson and Becker opened Inman's computer and observed the files containing child pornography, they "were not acting to assist law enforcement personnel." The court found that Watson and Becker did not act at the request of law enforcement officials, and that Watson and Becker acted to satisfy their curiosity, rather than to elicit a benefit for the government.

We conclude that the district court did not err in finding that the actions of Watson and Becker were not subject to the Fourth Amendment. The record supports the conclusion that in opening Inman's computer and accessing a few files, these employees did not act with the intent to assist the government in its investigatory or administrative purposes. It is virtually undisputed that Watson and Becker first opened the computer to satisfy their curiosity about Inman's new girlfriend. When Watson noticed icons with suspicious filenames, he evidently was concerned that they might contain illegal child pornography, but he also testified at trial that he "wasn't thinking anything about policy" or "legality" when he accessed the files. Only a moment passed between the initial foraging for information about Inman's girlfriend and the opening of the computer files. We are not persuaded that the district court erred in declining to find that Watson's intent shifted from that of curious fellow employee to law enforcement adjunct in that short period of time. That Watson thereafter sought advice from a local police chief by presenting a "theoretical" scenario, and then deliberated with Becker for twenty to thirty minutes before reporting the discovery of child pornography, further supports the conclusion that Watson and Becker had not already formed an intent to assist law enforcement when they first accessed Inman's files. We therefore uphold the district court's denial of Inman's motion to suppress evidence.

B.

Inman also contends that the district court erred in denying his motion for acquittal. He argues that the government did not present sufficient evidence to establish the jurisdictional element under 18 U.S.C. § 2252A(a)(5)(B) (2006), as charged to the jury. The government could prove this element in one of two ways: by proving either that the "image of child pornography . . . has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer," or that the image "was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." *Id*.[3]

The government prosecuted Inman's case on the second theory. The indictment charged Inman with three counts of possession of child pornography. Each count charged that Inman "did knowingly possess material that contains an image of child pornography that was produced using materials that traveled in interstate commerce." At trial, the government presented evidence on all three counts that the images in question were produced using materials that had traveled in interstate or foreign commerce. There was testimony as to count one that the hard drive of Inman's

---

[3]The text quoted is the version of § 2252A(a)(5)(B) that was in effect at the time of Inman's offense, which occurred on March 15, 2006. Since then, Congress has twice amended § 2252A(a)(5)(B). *See* Pub. L. No. 110-401, sec. 304(a)(1), 122 Stat. 4229, 4242 (2008); Pub. L. No. 110-358, secs. 103(a)(4)(D), 103(b), 203(b)(2), 122 Stat. 4001, 4003-04 (2008). The jurisdictional element of § 2252A(a)(5)(B), as currently written, can be established by proving either that the "image of child pornography . . . has been mailed, or shipped or transported *using any means or facility of interstate or foreign commerce or* in *or affecting* interstate or foreign commerce by any means, including by computer," or that the image "was produced using materials that have been mailed, or shipped or transported in *or affecting* interstate or foreign commerce by any means, including by computer." 18 U.S.C.A. § 2252A(a)(5)(B) (Westlaw 2009) (emphases added).

computer was manufactured in the Philippines, and as to counts two and three that two DVDs found in Inman's home in Missouri were produced outside of Missouri. This testimony was unimpeached and uncontradicted.

Despite the wording of the indictment, the district court instructed the jury, at the government's suggestion, that for each count the jury must find "that the material containing the visual depictions was produced using materials that had been mailed, shipped or transported in interstate or foreign commerce." (Instruction Nos. 11, 12, 13; App. 55-59). There is a subtle but significant difference between this instruction and the wording of the indictment. In the indictment, the focus is on whether the materials that were *used to produce the images*, *i.e.*, the hard drive or the DVDs, traveled in interstate or foreign commerce. The focus of the jury instruction is on whether the materials that were *used to produce the hard drive and DVDs* traveled in commerce. As the case was charged to the jury, the government was required to prove on count one that the hard drive, and on counts two and three that the DVDs, were produced using materials that *had been* shipped in interstate or foreign commerce – meaning that the materials were shipped *before* they were assembled into the hard drive or DVDs, respectively. The jury convicted, and Inman moved under Federal Rule of Criminal Procedure 29(c) for judgment of acquittal, arguing that the government failed to produce evidence establishing the jurisdictional element as charged to the jury.[4] The district court denied the motion.

---

[4]After oral argument before this court, the government furnished documents purporting to show that Inman's laptop computer was manufactured in China. We infer that the government suggests that the hard drive was among the "materials" used to produce the computer, which in turn contained the visual depictions of child pornography, and that because the hard drive was made in the Philippines, it must have traveled in foreign commerce to China before it was used to produce the computer. Even if we were to expand the record on appeal to include the proffered evidence, it does not show that the hard drive traveled in foreign commerce. The Constitution authorizes Congress to regulate commerce "with foreign Nations," U.S. Const. art. I, § 8, cl. 3, not commerce among foreign nations. *See Gibbons v. Ogden*,

We typically review sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U.S. 307 (1979), asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319; *see, e.g.*, *United States v. Red Bird*, 450 F.3d 789, 791 (8th Cir. 2006). Where a properly instructed jury returns a verdict of guilty, this standard preserves the jury's role as "weigher of the evidence" while ensuring that "the record evidence could reasonably support a finding of guilty beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. But under the unusual circumstances of this case, the question is not whether the evidence is sufficient to sustain the verdict of a properly instructed jury. Rather, the question is whether, and under what circumstances, a conviction may be upheld if the evidence is insufficient to establish one of the elements of the offense as charged to the jury, because the jury instruction erroneously deviated from the elements as defined by statute and charged in the indictment.

Our inquiry is guided by the justification for sufficiency-of-the-evidence review generally. In *Jackson*, the Supreme Court explained that such review is undertaken "to guarantee the fundamental protection of due process of law." *Id.* That protection requires that a defendant's guilt be established by "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see Jackson* 443 U.S. at 318-19. A defendant has no due process right, however, to proof beyond a reasonable doubt of elements *not* necessary to constitute the crime charged, including elements erroneously or unnecessarily charged to the jury. If, for example, a jury is charged that it must find three statutory elements and a fourth element not required by applicable law, that the evidence is insufficient to prove the fourth non-statutory element does not mean that

22 U.S. (9 Wheat.) 1, 193 (1824); *United States v. Martens*, 59 M.J. 501, 506-07 (A.F. Ct. Crim. App. 2003). The jury likewise was instructed that "'foreign commerce'... means commerce between any state, territory or possession of the United States and a foreign country." (Instruction No. 15).

a conviction that is properly supported under the applicable law deprives the defendant of his right to due process.

Consistent with this understanding, our court held in *Coca Cola Bottling Co. of Black Hills v. Hubbard*, 203 F.2d 859 (8th Cir. 1953), that sufficiency of the evidence is to be measured according to the elements as defined by the applicable law, not as set forth in erroneous, albeit unobjected-to, jury instructions. *Id.* at 862. Judge Sanborn, writing for the court, explained:

> It is true, of course, that an appellant may not challenge on review the correctness of instructions to which he took no exceptions or only a general exception. In that sense, and in that sense only, it may be said that the instructions to which no exceptions are taken become the law of the case for determining whether the instructions are subject to review on appeal. But in determining whether a trial court has erred in denying a motion for a directed verdict made at the close of the evidence, it is the applicable law which is controlling, and not what the trial court announces the law to be in his instructions. This Court must ascertain for itself what the applicable law is, whether the instructions were excepted to or not.

*Id.* (citations omitted); *accord Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812, 825 n.17 (2d Cir. 1984) (Friendly, J.). Although *Hubbard* was a civil case, it expressly disapproved and overruled *Pevely Dairy Co. v. United States*, 178 F.2d 363, 367 (8th Cir. 1949), a criminal case in which the court held that unobjected-to jury instructions became the law of the case for determining sufficiency of the evidence. *See Hubbard*, 203 F.2d at 861-62 & n.1. On the question whether the sufficiency of evidence should be measured against "applicable law," rather than erroneous jury instructions, *Hubbard* thus acknowledged no distinction between civil and criminal cases.

Because "an appellant may not challenge on review the correctness of instructions to which he took no exceptions or only a general exception," *id.* at 862,

a conviction may be upheld against a sufficiency challenge where a rational jury could have found, beyond a reasonable doubt, each element of the offense as charged in the jury instructions, even where the instructions vary from the statutory elements of the offense. *E.g.*, *United States v. Ausler*, 395 F.3d 918, 920 (8th Cir. 2005); *United States v. Tapio*, 634 F.2d 1092, 1094 (8th Cir. 1980) (per curiam). In that situation, there is no need to conduct a separate analysis of whether the evidence was sufficient to establish statutory elements on which the appellant did not seek an instruction.

The analysis is more complicated where the evidence is insufficient to establish an element erroneously charged to the jury, but possibly sufficient to prove the elements required by the applicable law, including an element not charged to the jury. In a criminal case, the Due Process Clause requires that the prosecution prove all elements beyond a reasonable doubt, and the Sixth Amendment requires that "the jury, rather than the judge, reach the requisite finding of 'guilty.'" *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993). Nonetheless, two circuits have held that when a jury convicts based on a patently erroneous jury instruction that varies from the indictment, the conviction may be affirmed if any rational trier of fact could have found the essential elements of the offense, as defined by applicable law, beyond a reasonable doubt. *United States v. Guevara*, 408 F.3d 252, 258 (5th Cir. 2005); *United States v. Zanghi*, 189 F.3d 71, 79 (1st Cir. 1999). While we think the jury instruction in this case was patently incorrect, we can resolve the appeal without deciding whether it is appropriate to apply the deferential standard of review used in *Guevara* and *Zanghi*. We conclude, rather, that where a statutory element of an offense is included in the indictment but erroneously omitted from instructions to the jury, and the evidence is insufficient to establish the unobjected-to element used instead, the conviction may be affirmed against a sufficiency challenge where the evidence is so overwhelming or incontrovertible that there is no reasonable doubt that any rational jury would have found that the government proved the statutory element.

In reaching this conclusion, we are informed by the Supreme Court's treatment of erroneous jury instructions in a related context. In cases where the defendant objects to a flawed jury instruction, the Court has held that the instructional error – whether one of misdescribing an element or omitting an element altogether – is subject to harmless-error analysis. *See Neder v. United States*, 527 U.S. 1, 15 (1999); *Pope v. Illinois*, 481 U.S. 497, 502 (1987). Acknowledging in *Neder* that "an improper instruction on an element of the offense violates the Sixth Amendment's jury trial guarantee," 527 U.S. at 12, the Court held that the error may be disregarded if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* at 18. Harmless-error analysis does not apply directly in a case like this one, where the defendant challenges his conviction based only on the sufficiency of the evidence, for there is no objection to the instructional error. But we do not think a jury's verdict should be more readily vacated when the defendant acquiesces in the instructional error than when the defendant disapproves of it. As in *Neder* and *Pope*, the government's defense of the verdict on appeal is consistent with the theory of prosecution presented in the indictment and at trial, despite the erroneous jury instruction. *Cf. Chiarella v. United States*, 445 U.S. 222, 236 (1980). Thus, "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence," *Neder*, 527 U.S. at 17, and "no rational juror, if properly instructed," could find that the element was not satisfied, *Pope*, 481 U.S. at 503, the defendant's conviction should stand.

Some of our cases after *Hubbard* have reintroduced the notion that erroneous jury instructions become "law of the case" for purposes of sufficiency review. *See United States v. Staples*, 435 F.3d 860, 866 (8th Cir. 2006); *Ausler*, 395 F.3d at 920; *Tapio*, 634 F.2d at 1094; *United States v. Cluck*, 542 F.2d 728, 731 n.2 (8th Cir. 1976). In none of these cases, however, did the court have occasion to consider whether the defendant's conviction could be sustained if the evidence incontrovertibly established the statutory element on which the jury was not instructed. In *Tapio* and

*Ausler*, it was not necessary to reach the question, because the court concluded that the evidence was sufficient to sustain the defendants' convictions under the elements as charged to the jury. *See Ausler*, 395 F.3d at 920; *Tapio*, 634 F.2d at 1094. The issue was rendered moot in *Staples* by the fact that it was "doubtful" whether the evidence would have supported the defendants' convictions even if the jury had been properly instructed. 435 F.3d at 868.[5] *Cluck* assumed that the jury instructions correctly stated the applicable law, 542 F.2d at 736, and thus addressed "law of the case" only in *dicta*. *Id*. at 731 n.2. In *Tapio*, moreover, the indictment also deviated from applicable law, so measuring the sufficiency of evidence at trial according to applicable law would have raised an additional question under the Grand Jury Clause of the Fifth Amendment. *Cf. Stirone v. United States*, 361 U.S. 212, 216-18 (1960); *United States v. Gill*, 513 F.3d 836, 849-50 (8th Cir. 2008); *Zanghi*, 189 F.3d at 79 & n.7.

We turn now to whether the evidence in this case is sufficient to support the conviction. The government failed to prove the jurisdictional element charged to the jury, but we review the sufficiency of the evidence according to the element as defined

---

[5]In *Staples*, the defendants were convicted of bank fraud in violation of 18 U.S.C. § 1344. 435 F.3d at 863-66. Although § 1344 prohibits two distinct types of bank fraud, the district court instructed the jury that the defendants could not be found guilty unless the evidence showed that they engaged in *both* types. *Id.* at 866. The defendants challenged the sufficiency of the evidence, and we reversed, concluding that there was little evidence that they had engaged in one type of bank fraud and no evidence that they had engaged in the other. *Id.* at 867-68. It might be argued that one or both of the convictions in *Staples* should have been affirmed under the more deferential standard of *Jackson v. Virginia*, 443 U.S. at 319, given that the jury rendered a verdict on *more* elements than necessary to sustain a conviction. The court in *Staples*, however, was at best equivocal on whether the evidence met even the *Jackson* standard with respect to either type of bank fraud. 435 F.3d at 868. To the extent that *Staples* implicitly deviated from the rule of *Hubbard* that sufficiency is measured according to the applicable law, we apply the earlier precedent. *See T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006).

by statute and charged in the indictment. Although the actual jurisdictional element of § 2252A(a)(5)(B) was not charged to the jury, we will uphold Inman's conviction if there is no reasonable doubt that any rational jury would have found that the government proved that Inman's hard drive and DVDs – the materials Inman used to produce the images of child pornography – traveled in interstate or foreign commerce. At trial, the government presented undisputed evidence that Inman's hard drive and DVDs were shipped in interstate or foreign commerce. A witness from Hitachi Global Storage Technologies testified that Inman's hard drive was made by Hitachi in the Philippines and then shipped elsewhere. (T. Tr. III, at 46). A witness from Sony Corporation, the maker of Inman's DVDs, testified that Sony manufactures all of its products outside Missouri and then ships them to distribution centers and retail outlets. (T. Tr. III, at 47). Inman did not question the credibility or accuracy of this testimony. We have no doubt that any rational jury would have concluded that the government proved the jurisdictional element of § 2252A(a)(5)(B), for the record contains no evidence that could rationally lead to a contrary finding. *See Neder*, 527 U.S. at 19. Accordingly, there is sufficient evidence to support Inman's conviction under the applicable law.[6]

\*　　　\*　　　\*

For the foregoing reasons, the judgment of the district court is affirmed.

_____

_____

[6]We reject Inman's contention, raised in his reply brief, that he was denied his Fifth Amendment right to be tried only on charges presented in an indictment returned by a grand jury. *See Stirone*, 361 U.S. at 216-18. The indictment correctly charged the jurisdictional element of § 2252A(a)(5)(B) under applicable law, alleging that the images of child pornography were produced using materials that traveled in interstate commerce. We affirm the conviction because there was sufficient undisputed evidence to establish the statutory element charged by the grand jury.