# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1496

———————

United States of America,                    \*

                                      \*

        Appellee,                \*   Appeal from the United States

                                        \*   District Court for the Southern

     v.                       \*   District of Iowa.

                                        \*

Randy Lee Johnson, Jr.,            \*

                                      \*

        Appellant.              \*

———————

Submitted: September 24, 2010
Filed: August 30, 2011

———————

Before BYE, BEAM, and SMITH, Circuit Judges.

———————

BEAM, Circuit Judge.

A jury convicted defendant Randy Lee Johnson, Jr., (Johnson) of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252(a)(2), and knowingly possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The district court sentenced him to 135 months' imprisonment for the receipt conviction and 120 months' imprisonment for the possession conviction, to be served concurrently. On appeal, Johnson asserts that there is insufficient evidence to support his receipt conviction or, in the alternative, that his convictions for both receiving and possessing the same images of child pornography violate the Double Jeopardy Clause. The government asserts that there is sufficient evidence to support the receipt

conviction, but duly concedes that there is a Double Jeopardy violation if both convictions stand. See United States v. Muhlenbruch, 634 F.3d 987, 1002-04 (8th Cir. 2011) (holding, under plain error review, that defendant's convictions for both possessing and receiving child pornography under 18 U.S.C. § 2252(a)(2), (4)(B), violated the Double Jeopardy Clause where the convictions were based on the same facts and images). We hold that there was insufficient evidence to support the receipt conviction. Therefore, we reverse and vacate the receipt conviction and remand for resentencing on the possession conviction.

I.    BACKGROUND

In November 2008, Johnson, a photographer, was taking photos at a hockey game in Des Moines, Iowa. Johnson's assistant, Dawn Gorelick, was stationed at a booth in the hockey arena to download digital photos onto Johnson's laptop computer when memory cards in Johnson's digital camera became full. While Gorelick was sorting photos on Johnson's laptop, she discovered what she believed to be images of child pornography. With the help of a friend, she contacted an off-duty police officer in the arena and showed him one of the images she discovered. After viewing the image, the officer confiscated Johnson's computer and escorted Gorelick to a first aid station. The officer then contacted an on-call detective.

Meanwhile, Johnson discovered his computer was missing and called Gorelick's cellular phone. The off-duty officer answered the call, identified himself, and invited Johnson to meet with him at the first aid office. Johnson went to the office and the officer explained that he found apparent child pornography on Johnson's computer and denied Johnson's request that he return the computer. Shortly thereafter, the on-call detective arrived at the arena and asked Johnson if she could interview him. Johnson agreed, and the detective and two other law enforcement officers accompanied Johnson to a private room.

In the private room, Johnson was advised of his <u>Miranda</u> rights and he signed a form waiving such rights. Johnson told the detective that he saved adult pornography on his computer in a file entitled "girls," and that he had "stumbled upon" child pornography while looking at adult pornography on the Internet. Johnson denied purposefully downloading child pornography, but he did admit that he "save[s] everything." He also explained that others had access to his laptop in public, but he was the only person with private access to the computer.

After this interview, police obtained a search warrant to forensically examine Johnson's computer. During the search, a forensic examiner discovered 190 images of child pornography on Johnson's laptop in file folders entitled "girls" and "pictures," but the examiner was unable to determine whether the images came from the Internet or from some other source. In December 2008, Johnson met with an investigator in a private room at the police station to discuss the results of the forensic examination, and Johnson again waived his <u>Miranda</u> rights. After the investigator told Johnson that nearly 200 images of child pornography were found on his computer, Johnson stated that he knew he had viewed child pornography, but he did not know how many images he saved. Again, he told the investigator that he saved the files because "I save everything." He explained that he first stumbled upon child pornography while following Internet links, and acknowledged that the illicit images on his computer were from "Internet stuff." Johnson also confirmed that he was the only person who would have downloaded child pornography onto his computer.

A grand jury returned an indictment charging Johnson with both possessing and receiving child pornography. At trial, Johnson took the stand and recanted his videotaped confession. He explained that he would have "said anything" to the investigator during the interview due to stress and fear, and he had "no idea" how the child pornography got onto his computer. Johnson moved for judgment of acquittal at the close of the government's case and at the close of all evidence, which the

district court denied. The jury found Johnson guilty on both counts, and Johnson appeals.

## II. DISCUSSION

Johnson argues that there is insufficient evidence to support his conviction for receiving child pornography under 18 U.S.C. § 2252(a)(2) because the government failed to establish the jurisdictional element of the offense. This is an atypical sufficiency challenge, however, because both parties agree that the jurisdictional element was correctly stated in the indictment, but erroneously charged to the jury. As Johnson suggests, United States v. Inman, 558 F.3d 742 (8th Cir. 2009), governs the unique sufficiency challenge presented in this case and, under the analytical framework set forth in Inman, we agree with Johnson that the government failed to establish the jurisdictional element of the receipt offense.

In the indictment, Johnson was charged with receiving child pornography that either (1) had been shipped and transported in interstate and foreign commerce; or (2) contained materials which had been so shipped and transported. See 18 U.S.C. § 2252(a)(2). This jurisdictional element was disputed at trial. The government presented Johnson's videotaped confession wherein he admitted to downloading child pornography from the Internet–a channel of interstate commerce. But, Johnson took the stand and recanted his confession, explaining that he "would have said anything" to the investigators due to his mental state at the time of his confession. When confronted with the specific images at issue in this case, Johnson testified that he had "no idea" where the images came from. Also, while questioning its own computer forensics examiner, the government asked, "You indicated that all of these images had come from the Internet, is that correct?" The examiner responded, "No. I don't know where those images came from. All I can tell you is that they're downloaded to that hard drive." The expert also explained that the file name of one of the images indicated that it could have come "from another person" and that the images on

Johnson's computer "could have been taken from CD's" or other sources. Finally, during closing arguments, Johnson's attorney argued before the jury, "[D]id [the images at issue] come from the Internet? And the answer to that question is indisputably we don't know." Indeed, there was a question for the jury as to whether the government satisfied the jurisdictional element of § 2252(a)(2), as charged in the indictment. Due to an instructional error, however, the jury never decided this question.

Despite the wording of the indictment, the district court erroneously instructed the jury–with no objection from the government[1]–that it must find that "[t]he material[s] containing the [illicit] visual depictions were produced using materials that had been mailed, shipped, or transported by computer in interstate or foreign commerce." In Inman, the court interpreted this same instruction as requiring the government to prove that the materials containing illicit images–e.g., a computer, hard drive, or DVD–"were produced using materials that *had been* shipped in interstate or foreign commerce–meaning that the materials were shipped *before* they were assembled into the [computer, hard drive, or DVD]." 558 F.3d at 747. The government presented no such evidence at trial. While the government introduced evidence that Johnson downloaded images of child pornography from the Internet and evidence that Johnson's computer traveled in interstate commerce, the government presented no evidence that the materials used to produce Johnson's computer–e.g., computer chips, screws, wires, etc.–traveled in interstate commerce *before* they were assembled into the computer.

As the Inman court explained, where a jury is properly instructed, we review sufficiency challenges by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

[1]Indeed, the government deemed the court's instructions "acceptable" at trial.

essential elements of the crime beyond a reasonable doubt."[2] Id. at 747 (quotation omitted). But, where, as here, the jury is not properly instructed and there is no objection to the erroneous instruction at trial, Inman provides that "a conviction may be upheld against a sufficiency challenge where a rational jury could have found, beyond a reasonable doubt, each element of the offense as charged in the jury instructions." Id. at 748. As in Inman, 558 F.3d at 747, 750, the evidence presented in this case was clearly insufficient to satisfy the erroneous jury instruction because the government presented *no* evidence that the materials used to produce Johnson's computer traveled in interstate commerce before they were assembled into the computer.

Continuing under Inman's guidance, we may still affirm Johnson's conviction if "the evidence is so overwhelming or incontrovertible that there is no reasonable doubt that any rational jury would have found that the government proved the

---

[2]The government contends that we should review Johnson's challenge for plain error, the standard we apply to review unobjected-to jury instructions. We disagree. Johnson clearly raises a sufficiency-of-the-evidence challenge, not a direct challenge to the jury instructions. See Inman, 558 F.3d at 749 (recognizing in an identical context that the defendant's sufficiency challenge was not an objection to the instructional error). Moreover, it was not Johnson's burden to object to the jury instruction because, in light of the evidence presented at trial, the jury would have acquitted Johnson if it had properly applied the instruction. Therefore, if anyone is to be faulted for failing to object to the instruction, it should be the government. See, e.g., United States v. Ausler, 395 F.3d 918, 920 (8th Cir. 2005) (holding that an erroneous jury instruction became the law of the case for the purpose of reviewing defendant's sufficiency challenge because the government failed to object to the instruction at trial); United States v. Williams, 376 F.3d 1048, 1051 (10th Cir. 2004) ("[T]he government [has] the burden of proving each element of a crime as set out in a jury instruction to which it failed to object, even if the unchallenged jury instruction goes beyond the criminal statute's requirements."); United States v. Jimenez Recio, 537 U.S. 270, 279 (2003) (Stevens, J., concurring in part and dissenting in part) ("The prosecutor, like the defendant, should be required to turn square corners.").

statutory element."[3] <u>Inman</u>, 558 F.3d at 749. Under this rigorous standard of review, a defendant's conviction may be affirmed "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence . . . and no rational juror, if properly instructed, could find that the element was not satisfied." <u>Id.</u> (internal quotations omitted). In <u>Inman</u>, the court affirmed the defendant's conviction under this standard because the government presented "undisputed," "uncontradicted," and "unimpeached" evidence establishing the statutory element at trial. <u>Id.</u> at 747, 750-51. Based on such evidence, the court concluded, "We have no doubt that any rational jury would have concluded that the government proved the [statutory] jurisdictional element . . . for the record contains no evidence that could rationally lead to a contrary finding." <u>Id.</u> at 750.

This is where the present case is different from <u>Inman</u>. Here, to satisfy the statutory jurisdictional element, the government introduced Johnson's pre-trial confession wherein he admitted to downloading child pornography from the Internet. But this evidence was by no means overwhelming, undisputed, uncontradicted, or unimpeached. Indeed, Johnson recanted the confession at trial, explained that he would have "said anything" to the investigator given his mental state at the time of his confession, and adamantly asserted that he had "no idea" how the illicit images got onto his computer. Moreover, the government's own witness could not verify that the images came from the Internet and, indeed, opined that the images could have come from CD's, another person, or some other source. The government's evidence on this element is simply not "overwhelming" and a rational jury certainly could have concluded that the government failed to prove the element beyond a reasonable doubt.

---

[3]This standard is based on the Supreme Court's application of harmless-error review to objected-to jury instructions. <u>Inman</u>, 558 F.3d at 749 (discussing <u>Neder v. United States</u>, 527 U.S. 1, 15 (1999), and <u>Pope v. Illinois</u>, 481 U.S. 497, 502 (1987)).

Nevertheless, the analysis under <u>Inman</u> is still not complete. Because the evidence in <u>Inman</u> satisfied the rigorous "overwhelming or incontrovertible" standard, the court expressly declined to decide whether a more government-friendly standard of review should apply under these circumstances. The court noted that in two of our sister circuits a defendant's conviction may be affirmed, despite patently erroneous jury instructions, if "any rational trier of fact could have found the essential elements of the offense, as defined by applicable law, beyond a reasonable doubt." <u>Id.</u> at 749 (citing <u>United States v. Guevara</u>, 408 F.3d 252, 258 (5th Cir. 2005); <u>United States v. Zanghi</u>, 189 F.3d 71, 79 (1st Cir. 1999)). This is the same standard we would have applied to Johnson's sufficiency challenge if the jury had been properly instructed. <u>See</u> <u>id.</u> at 747 (explaining that the rationale underlying our usual standard for reviewing sufficiency challenges is supported *if* a *properly instructed* jury returns a verdict of guilty). In dicta, the <u>Inman</u> court implied that applying this government-friendly standard in cases such as this, where a jury is *not* properly instructed, would violate the following well-established constitutional principles: (1) "the Due Process Clause requires that the prosecution prove all elements beyond a reasonable doubt," <u>id.</u> at 749; and (2) "the Sixth Amendment requires that 'the jury, rather than the judge, reach the requisite finding of 'guilty.''" <u>Id.</u> (quoting <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 277 (1993)). We agree with this assessment and we adopt <u>Inman</u>'s rigorous "overwhelming or incontrovertible" standard, not the relatively government-friendly standard applied in two of our sister circuits. And, under <u>Inman</u>'s rigorous standard of review, we must reverse Johnson's conviction under § 2252(a)(2).

## III.  CONCLUSION

We reverse and vacate Johnson's conviction for receiving child pornography under 18 U.S.C. § 2252(a)(2), and remand for resentencing on his conviction for possessing child pornography under 18 U.S.C. § 2252(a)(4)(B).

SMITH, Circuit Judge, dissenting.

I respectfully dissent. The majority adopts a heightened standard of review for sufficiency-of-the evidence challenges when the conviction is based on an erroneous jury instruction on one of the elements of the offense. In such cases, according to the majority, we may affirm the conviction if the evidence satisfies the statutory element—but only if we "'conclude[] beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence . . . and no rational juror, if properly instructed, could find that the element was not satisfied.'" *Supra* Part II (quoting *Inman*, 558 F.3d at 749). Because I believe that the evidence on the jurisdictional element of Johnson's receipt conviction was "overwhelming" and "incontrovertible," I would affirm Johnson's receipt conviction.

As an initial matter, *Inman* itself did not create a new standard of review. Indeed, as the majority notes, the *Inman* court observed that two circuits have treated sufficiency challenges involving an erroneous jury instruction just like any other sufficiency challenge, but the court found that it could "resolve the appeal without deciding whether it is appropriate to apply the deferential standard of review" used by those circuits. 558 F.3d at 749 (citing *Guevara*, 408 F.3d at 258; *Zanghi*, 189 F.3d at 79). Instead, the *Inman* court concluded that it could affirm the conviction because, on the facts of that case, the evidence was "overwhelming or incontrovertible" on the disputed element. *Id.* Thus, *Inman* clearly declined to adopt a precise standard of review. The majority now "adopt[s] *Inman*'s rigorous . . . standard," *supra* Part II, but also goes much further, effectively turning this court's standard of review for sufficiency challenges on its head.

The standard of review for a "typical" sufficiency challenge is quite familiar but nevertheless worth reviewing. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that

-9-

support the verdict." *United States v. Scofield*, 433 F.3d 580, 584–85 (8th Cir. 2006) (quotation and citation omitted). In addition, "we must not weigh the evidence or assess the credibility of witnesses." *United States v. Garcia-Hernandez*, 530 F.3d 657, 661 (8th Cir. 2008) (quotation and citation omitted). Finally, we will not lightly overturn a jury's guilty verdict. *United States v. Van Nguyen*, 602 F.3d 886, 897 (8th Cir. 2010). The majority's analysis, in contrast, grants all reasonable inferences and views the evidence in the light most favorable to Johnson—the *appellant*—and *not* to the jury's guilty verdict.

As the majority notes, Johnson *only* challenges the sufficiency of the evidence as to the jurisdictional element. The majority acknowledges that this element, as charged in the indictment, would be established if the evidence showed that Johnson acquired the child pornography from the Internet. *See supra* Part II. In a videotaped confession admitted at trial, Johnson confessed to acquiring the child pornography from the Internet, viewing it online after following various links. The majority, however, states that Johnson "recanted" this confession at trial. On direct examination, Johnson and his counsel had the following exchange about whether Johnson downloaded any child pornography from the Internet:

Q. So [Detective Kelly] mentioned in her testimony yesterday that you denied downloading anything.

A. Correct.

Q. Or at least knowingly downloading anything?

A. Correct.

\* \* \*

Q. Having watched the tape [of the videotaped confession], is [sic] there parts on that where you're not comfortable that you told them the whole truth?

A. Yes.

Q. How so?

-10-

A.     Well, because basically by telling them what I did, it led them to believe other things and—which weren't true.

Q.     Why don't you be more specific. Tell the jury what you mean.

A.     If you see something, it's not the same as if you download something. . . .

Later, Johnson had the following exchange with his counsel about how the child pornography might have ended up on his computer's hard drive:

Q.     In the video you mention that you had, I think your words were stumbled upon things that you thought were inappropriate pictures of children, child pornography?

A.     Correct. *You can't avoid that online.*

Q.     Then you're pressed about downloading it in the video. Do you recall that portion?

A.     Yes.

Q.     And eventually you seem to agree, okay, I downloaded it, or I believe your exact words were, I download everything?

A.     Yes.

Q.     Did you intentionally download pictures of child pornography?

A.     Absolutely not. . . .

Q.     You understand watching the video that you say several times, I download everything, and in the context of the conversation, it's taken as, and you seem to be agreeing with, well, that means you downloaded child pornography, too?

A.     In that state of mind, I would have said anything, yes.

* * *

Q.     Obviously, there are pictures on your computer?

A.     Yes.

Q.     How did they get there?

A.     I have no idea. If I did, I would not be sitting here right now.

Q.     Do you understand you're charged with knowingly receiving pictures of sexual depictions of children? Did you knowingly receive any of those things?

-11-

A. No, I did not.

Q. *You mentioned before you've seen such photographs?*

A. *Yeah. You can't avoid seeing that stuff. If you look at any adult porn whatsoever, you will find everything.*

Q. *And I think you mentioned in the conversation, you had seen it, you would click on it, it's like a plane wreck or train wreck to you?*

A. *Correct.*

Q. Other than that, did you intentionally or knowingly try to keep any of that?

A. No, I did not.

Q. How about possessing it? Did you knowingly or intentionally try to possess any of those things?

A. No, I did not. . . .

(Emphases added.) On cross-examination, Johnson had the following exchange with the government attorney:

Q. During the course of your conversation with Detective Kelly, you admitted that you had found child pornography when you were looking at adult pornography, correct?

A. You see it as advertisements, yes.

\* \* \*

Q. Isn't it true, Mr. Johnson, that you downloaded a number of child pornography images from the Internet to your laptop computer?

A. Absolutely not. . . .

Taken as a whole, Johnson's testimony does *not* amount to a full recantation of his videotaped confession. Johnson's testimony not only failed to contest his videotaped statement that the child pornography came from the Internet,[4] but his

---

[4]As noted above, Johnson did deny that he "downloaded" the child pornography from the Internet. However, he never denied that he saw the child

testimony actually *reaffirmed* that the child pornography came from the Internet. Indeed, much like his videotaped confession, Johnson testified that he saw the child pornography "online" and agreed that he had "click[ed] on" links to child pornography while looking at adult pornography. To the extent Johnson recanted his videotaped confession, he *only* stated that he did not "knowingly or intentionally" download the child pornography and had "no idea" how it got on his computer. But this recantation would only dispute the *mens rea* element of the offense; it would not dispute the jurisdictional element. In other words, reading his testimony as a whole, Johnson denied knowing how the child pornography got onto his computer; he never denied—and, in fact, he reaffirmed—that he came across the child pornography on the Internet. The majority, however, would read Johnson's testimony much more broadly, viewing it in a light that is far more charitable to Johnson.

Moreover, the majority opinion re-weighs the credibility of Johnson's testimony. If the jury had believed Johnson's testimony, including his partial recantation of his videotaped confession, it would not have convicted him because it could not have found the *mens rea* element of the offense. But the jury did convict Johnson, allowing this court to conclude, quite confidently, that it discredited Johnson's testimony. *Inman*'s heightened standard of review does not alter this court's long-standing rule that the appellate court cannot revisit a jury's credibility assessment when reviewing the sufficiency of the evidence on appeal. *Garcia-Hernandez*, 530 F.3d at 661. Yet the majority effectively does just that, stating that, based in part on Johnson's trial testimony, "a rational jury certainly could have concluded that the government failed to prove the [interstate-commerce] element beyond a reasonable doubt." *Supra* Part II.

---

pornography online. This is a meaningful distinction. Johnson's defense throughout trial was that he might have inadvertently viewed child pornography online, but he did not save the images to his computer. Again, by denying that he downloaded the child pornography from the Internet, Johnson's testimony—taken as a whole—reveals that he only disputed the *mens rea* element of the offense.

Finally, the majority grants one more inference in favor of Johnson. As the majority notes, the government's expert witness could not identify the source (i.e., the Internet, a CD, or a friend) of the child pornography found on Johnson's computer. This fact, however, does not *dispute* the evidence that Johnson came across the child pornography on the Internet. The majority essentially views this indeterminate testimony in the light most favorable to Johnson, suggesting that it somehow *undermines* the evidence—including the videotaped confession and Johnson's *own* trial testimony—on the jurisdictional element.

In sum, the majority's analysis dramatically alters this court's review of sufficiency-of-the-evidence challenges. Under the majority's approach, whenever a defendant's conviction was based on an erroneous jury instruction—regardless of whether he challenged the instruction at trial or on appeal—this court would review his sufficiency-of-the-evidence challenge under the *exact opposite* framework than what this court employs in a "typical" sufficiency challenge. Rather than "viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict," *Scofield*, 433 F.3d at 584–85, this court would now view the evidence and grant reasonable inferences in the defendant's favor. Rather than declining to "assess the credibility of witnesses" on appeal, *Garcia-Hernandez*, 530 F.3d at 661, this court would be able to ignore the jury's assessment of the witnesses.

Even assuming *Inman* can be read as requiring a more rigorous standard of review when the appellant's conviction is based on an erroneous jury instruction, that standard would *only* require this court to consider whether "the evidence is so overwhelming or incontrovertible that there is no reasonable doubt that any rational jury would have found that the government proved the statutory element." *Inman*, 558 F.3d at 749. It would not require this court to abandon its entire framework for reviewing the sufficiency of the evidence on appeal. Because I believe the evidence on the jurisdictional element of the receipt charged was "overwhelming" and

-14-

"incontrovertible," I would affirm Johnson's conviction for receiving child pornography. As a result, I would address the merits of Johnson's argument that his convictions for receiving and possessing the same images of child pornography violate the Double Jeopardy Clause.

————————————————————