# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2894

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Abdul Ahmed Asalati, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 12, 2010
Filed: August 12, 2010

_____

Before LOKEN, HANSEN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

The district court[1] found by a preponderance of the evidence that Appellant Abdul Asalati violated the conditions of his supervised release by, among other things, committing an assault. The district court revoked Asalati's supervised release and sentenced him to twenty-four months' imprisonment followed by lifetime supervised release and curfew. Asalati appeals, and we affirm.

_____

[1]The Honorable Dean Whipple, United States District Court for the Western District of Missouri.

In 2005, Asalati pleaded guilty to conspiring to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. His Presentence Investigation Report ("PSR"), to which he lodged no factual objections, indicates that he sold an undercover officer a total of 443.79 grams of cocaine and 2.5 grams of ecstacy. The Government stated it had evidence that Asalati conspired to distribute at least 500 grams of cocaine. The PSR also indicates that Asalati's criminal history includes burglary, felony and misdemeanor theft, misdemeanor and felony property damage, and automobile burglary. The district court sentenced Asalati to twenty-four months' imprisonment. Following his imprisonment, he was to be removed to Afghanistan. If not removed, he was to serve five years' supervised release. After Asalati served several months of post-prison custody with Immigration and Customs Enforcement ("ICE"), Afghanistan failed to provide the necessary paperwork for his removal. Accordingly, Asalati began serving five years' supervised release.

Subsequently, Asalati was charged with violating the conditions of his supervised release by: (1) failing to report a prior arrest to his probation officer; (2) lying to his probation officer; and (3) committing assault. The district court held an evidentiary hearing in July 2009 to address revocation of Asalati's supervised release. At the hearing, Asalati admitted the first two violations, but contested the assault charge.

The testimony at the hearing showed that the assault occurred outside a nightclub where Asalati worked. The victim, Chris Milan, and his friend, Kayla Moore, arrived at the club around 11:30 P.M.; each had a number of drinks throughout the evening. After the club closed, Milan and Moore went to a loft above the club for an after-hours party. Milan and Moore first encountered Asalati when Moore showed Milan to the bathroom. When they knocked on the bathroom door, they found Asalati with a nearly naked, unconscious woman. Asalati claimed that the woman was his

friend and he was helping her clean up after she had become sick from drinking. Nevertheless, Milan and Moore questioned Asalati in an accusatory manner, suspicious that Asalati may have been taking advantage of the woman.

At that point, the situation became hostile. Asalati testified that Milan took a swing at him and that an owner of the club told Milan and Moore to leave. He also stated that he heard the owners talking about beating Milan and Moore. Moore testified that she and Milan left the club after someone warned her that they needed to leave because "something bad's about ready to happen." She testified that after she and Milan left, they were outside the club when they heard the elevator from the loft open. She then saw Asalati and five other men exit the elevator and charge toward her and Milan. During the encounter, Moore was pushed over and "ended up getting hurt and kicked." She stated, however, that the same man who had warned her and Milan to leave came and stopped "the guy" from hurting her. When she regained her composure, she found Milan lying beaten and unconscious on a staircase by the club. Moore testified that she did not see Asalati assault Milan. It is undisputed, however, that Milan was assaulted and as a result had eleven staples in his head, bleeding in his frontal lobe, a swollen jaw, and was hospitalized for two days.

Asalati's recollection of the assault differs from Moore's testimony. He testified that although there was a conflict between Milan and Moore and the owners of the club, he did not touch Milan. He stated that he had in fact tried to help Moore after she was pushed to the ground. Asalati also elicited testimony from a detective who claimed to have seen a police report from the night of the assault that indicated Moore had not seen Asalati charge out of the building, but had left the club after Milan and simply found him unconscious. Moore denied describing the incident to the police that night. She testified, however, that she spoke to a detective the day after the assault and reported the events consistently with her testimony at the evidentiary hearing.

Milan's testimony corroborated Moore's description of the events, but he was unable to remember the assault and could not identify his assailants. He was, however, able to identify Asalati in a lineup.

After hearing counsels' arguments, the district court determined that Asalati's version of the events was not credible and that the preponderance of the evidence showed that Asalati participated in the assault. The district court revoked Asalati's supervised release and sentenced him to twenty-four months' imprisonment. In addition, the district court ordered Asalati be on supervised release for life or until he is removed or otherwise leaves the United States. Along with the standard conditions of supervised release, the district court ordered a curfew of 10:00 P.M., "until further order of the court."

During the course of sentencing, the district court made a number of references to Asalati's alien status and expressed frustration over the fact that, due to poor record-keeping, Asalati had not been removed to Afghanistan. Among other things, the district court stated, "I find it very telling that you're not a citizen of this country. Because of the poor record-keeping in the country you came from, this country cannot send you back to that country, to Afghanistan." The court further stated, "I'm doing th[is] . . . because you need to be deported, and if you're not going to be deported, I'm going to keep you under tight reins while you are here in the United States."

Asalati appeals, arguing that the district court erred in finding by a preponderance of the evidence that he committed assault and by imposing a lifetime term of supervised release with the condition of a lifetime curfew.

II.

"A defendant violates a mandatory condition of supervised release if he commits a federal, state, or local crime." United States v. Perkins, 526 F.3d 1107,

-4-

1109 (8th Cir. 2008) (citing 18 U.S.C. § 3583(d)). Upon finding a violation by a preponderance of the evidence, the district court has discretion to revoke a defendant's supervised release. Id. Here, the district court stated that it did not believe Asalati's version of the events and found that Asalati committed assault, in violation of Missouri law. Asalati's challenge concerns the district court's fact and credibility findings. He argues that the district court clearly erred in crediting Moore's testimony and in finding that there was sufficient evidence that he committed assault. We review factual findings for clear error. Id. Credibility findings are "virtually unreviewable on appeal." United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003) (quotation omitted).

On the credibility issue, Asalati attempts to call Moore's testimony into question. He does so by pointing to a detective's testimony regarding a police report containing a statement by Moore that on the night of the assault, she left the club after Milan and simply found him unconscious outside the club. Moore, however, denied making this statement. The record also shows that she had made statements in a police report the morning after the assault that were consistent with her testimony during the revocation hearing. Asalati's attack on Moore's credibility is the kind of "he said, she said" argument that we routinely find insufficient to overcome the high barrier to reversal of a district court's credibility finding. See United States v. Ralph, 480 F.3d 888, 890 (8th Cir. 2007); Carothers, 337 F.3d at 1019. The district court did not err in crediting Moore's version of the events.

Accepting Moore as a credible witness, we affirm the district court's factual conclusion. Moore testified that soon after she and Milan accused Asalati of sexual assault and were warned by another man that they better leave to avoid trouble, she saw Asalati among a group of men charging toward her and Milan. She then awoke to find her friend beaten and unconscious. Although Moore did not see Asalati strike Milan, she observed events immediately preceding and following the assault that strongly suggest he was involved. Further, there is no suggestion in the record that

the assault stemmed from anything other than the confrontation between Asalati and Milan and Moore. A preponderance of the evidence means only that the fact finder believes that the existence of the fact is more probable than its nonexistence. United States v. DeRosier, 501 F.3d 888, 896 (8th Cir. 2007). The record shows that the district court did not clearly err in finding that the Government met this standard.

III.

Asalati also challenges the district court's sentencing determination as to the term and conditions of his supervised release. He first argues that the district court improperly considered his alien status, thereby violating his constitutional right to due process and equal protection. He also argues that the district court's sentence was unreasonable due to its consideration of his removability and the imposition of a lifetime term of supervision and curfew. As to Asalati's constitutional claim, our review is *de novo*. See United States v. Rodriguez, 581 F.3d 775, 796 (8th Cir. 2009). We review the reasonableness of Asalati's revocation sentence for abuse of discretion. United States v. Miller, 557 F.3d 910, 917 (8th Cir. 2009). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Kreitinger, 576 F.3d 500, 503 (8th Cir. 2009) (quotation omitted).

We first consider Asalati's constitutional claims arising out of the district court's reference to his alien status. Asalati labels the district court's references discrimination on the basis of national origin. This was not the case. The record plainly demonstrates that the district court's references were to Asalati's alien status and removability, not his national origin. We have previously held that the Constitution does not prohibit differentiation at sentencing based on a defendant's alien status. See United States v. Navarro, 218 F.3d 895, 898 (8th Cir. 2000). In

Navarro, we held that "Congress has . . . the right to determine the conditions upon which noncitizens are allowed to remain in this country. If a violation of those conditions causes a prisoner . . . to be held more securely, the result is simply the permissible consequence of two things: the commission of the crimes and the defendant's status under the immigration statutes." Id. Here, as in Navarro, any difference in treatment is due to Asalati's immigration status and his continued inability to operate within the confines of the law. Our case law precludes relief on this ground.

In addition, the transcript shows that the district court's sentencing determination was ultimately driven by a concern for public safety and Asalati's dangerous nature, not his alien status or removability. We note first that while the district court is required to consider the § 3553(a) factors, it is not required to make specific findings as to each factor. United States v. Franklin, 397 F.3d 604, 606 (8th Cir. 2005). Here, the district court stated that it had considered the § 3553(a) factors and in fact made express findings related to a number of those factors. Specifically, the court noted that Asalati's repeated infractions demonstrated that he "can't live a lawful life in the United States." For this reason, the district court saw fit to "keep [Asalati] under tight reins while [he is] here in the United States." These statements demonstrate a consideration of Asalati's history and characteristics and a concern for protecting the public, both proper factors. See 18 U.S.C. § 3553(a). Although the district court referenced Asalati's alien status and expressed frustration with the inability to remove him, the district court's sentencing determination, properly viewed, was not based on Asalati's alien status or removability, but rather was based on proper sentencing factors.

To address the reasonableness of Asalati's term of supervised release, we first note that, given Asalati's underlying drug offense, a life term of supervised release is statutorily permissible. See United States v. Mora, 22 F.3d 409, 412 (2d Cir. 1994) ("In order to further Congress' intent to enhance drug offense penalties . . . a

sentencing judge may, where circumstances warrant, impose a supervised release term . . . up to the life of the defendant, notwithstanding the limits of section 3583(b)); United States v. Staggs, 527 F.3d 680, 681 (8th Cir. 2008) ("The maximum revocation sentence allowed, including imprisonment and additional supervised release, is equal to the maximum term of supervised release authorized for the original conviction offense."). Asalati's PSR from the underlying drug offense indicates the ineffectiveness of prior efforts at rehabilitation. The district court judge who presided over Asalati's revocation hearing also presided over the proceedings for his underlying drug offense, illustrating the district court's full awareness of this history. See Franklin, 397 F.3d at 607. Further, Asalati's participation in a violent assault demonstrates a continued and escalating danger to the public. As stated above, the district court specifically alluded to these concerns during sentencing. Although harsh, a lifetime term of supervised release is not outside the bounds of reason and is necessary under the circumstances of this case to provide the continued oversight appropriate for a repeat offender who has demonstrated himself capable of committing crimes with such violent force.

As for the district court's imposition of a curfew, such conditions must be "reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a)," "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a)," and be "consistent with any pertinent policy statements issued by the Sentencing Commission." United States v. Bender, 566 F.3d 748, 751 (8th Cir. 2009) (quotation omitted). A district court normally has wide discretion when imposing conditions on supervised release. United States v. Heidebur, 417 F.3d 1002, 1004 (8th Cir. 2005). Here, the nature and extent of Asalati's prior crimes—theft, burglary, automobile burglary, sale of controlled substances, and violent assault—demonstrate a continued and escalating inability to operate within the confines of the law. Further, given that many of Asalati's crimes occurred while he was on supervised release, it is apparent that less restrictive release conditions have thus far been ineffective. This, we believe, demonstrates that the

imposition of a curfew as a special condition is reasonably related to the protection of the public, Asalati's rehabilitation, effective correctional treatment, and deterring Asalati from committing future crimes. See 18 U.S.C. § 3553(a); id. § 3583(d)(1). Additionally, Asalati has not presented us with any reason to believe that the imposed curfew is greater than reasonably necessary to accomplish the above-articulated goals.

The district court imposed the maximum term of supervised release in this case, and a judge reasonably could have placed Asalati on supervised release for a shorter period of time. But our role in the process does not contemplate a substitution of our judgment for that of the district court; our role is to determine whether the district court's sentence was unreasonable. Gall v. United States, 552 U.S. 38, 51 (2007). Although the term of the supervised release portion of Asalati's revocation sentence was at the statutory maximum, its imposition was not unreasonable given his criminal history and demonstrated inability to become law abiding. Furthermore, should it later become prudent to modify the conditions or reduce the term of Asalati's supervised release, the district court has the discretion to do so. See 18 U.S.C. § 3583(e)(2).

We affirm the judgment of the district court.

_____