# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1317
_____

United States of America

*Plaintiff - Appellee*

v.

Ronald Goldberg

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: January 9, 2023
Filed: April 14, 2023
[Unpublished]
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

PER CURIAM.

The district court[1] found Ronald Goldberg violated a condition of his supervised release by defrauding an innkeeper and revoked his supervision, sentencing him to a 36-month term of imprisonment followed by two years of

_____

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

supervised release. Goldberg appeals, asserting: (1) the court erred when it found he defrauded an innkeeper; and (2) his revocation sentence is substantively unreasonable. We affirm.

In 2015, Goldberg pled guilty to two counts of bank fraud and one count of wire fraud, and he subsequently received a sentence of time served and a term of supervised release of five years. While under supervision, Goldberg served as a wine distributor. In 2018, a marketing coordinator for Lamborghini Dallas purchased wine from Goldberg valued at $1,120. The marketing coordinator provided Goldberg the information related to a corporate credit card ("Lamborghini Card") understanding Goldberg would run the card to receive payment for the wine.

On January 5, 2019, Goldberg checked into a beachfront resort in Palm Beach Florida, the Tideline, along with an associate Mark Kolta. At check-in, Goldberg completed an authorization form with respect to the Lamborghini Card, authorizing Tideline to charge fees related to lodging to the Lamborghini Card. Tideline charged the initial room deposit of around $1,000 to the Lamborghini Card. Kolta provided his personal card ("Kolta Card") to Tideline and authorized Goldberg to charge incidental expenses but not lodging fees to the Kolta Card.

On January 8, 2019, Goldberg informed a receptionist that Emily Nichols, Tideline's manager, had approved a waiver of his phone expenses. Accordingly, the receptionist noted on Goldberg's account that he would not receive phone charges. Notwithstanding Goldberg's representations, Nichols had never authorized waiver of phone charges. During his stay, Goldberg incurred thousands of dollars in phone charges.

On January 31, 2019, Tideline attempted to run the Lamborghini Card and the Kolta Card, but they were declined. Nichols then received a call from a Lamborghini Dallas marketing coordinator informing Tideline the Lamborghini Card should not have been used at the property. A representative of Lamborghini Dallas also informed Goldberg that he could not use the Lamborghini Card for his personal

expenses. Goldberg stated that he was unaware he could not do so, and his probation officer testified that Goldberg regularly used corporate cards in this manner. Nichols instructed Goldberg to provide a new method of payment. On February 2, 2019, Goldberg left Tideline in the middle of the night without providing an alternative method of payment.

The next day, Nichols emailed Goldberg and informed him that he had an unpaid balance of approximately $10,000. Goldberg disputed the amount, claiming that phone charges had been waived. He made no claim that he did not owe the remainder of the bill. In the following weeks, Goldberg twice told Nichols that he would return to Tideline to pay his balance but failed to follow through.

On March 30, 2019, Nichols reported Goldberg to law enforcement. Only then did Goldberg take steps to pay the bill. On April 1, 2019, Tideline accepted from Goldberg a $2,000 payment via a Visa credit card. Thereafter, Goldberg made additional attempts to pay his balance, but Tideline refused to accept payment. Tideline later removed Goldberg's phone charges from his account.

Goldberg's probation officer filed a petition to revoke, which, after amendment, proceeded to a three-day hearing before the district court. In response to the government's evidence, Goldberg claimed that he had provided his personal Mastercard credit card ("Mastercard Card") and not the Lamborghini Card at check-in. Goldberg further testified Kolta authorized Goldberg to charge lodging fees to the Kolta Card. Goldberg acknowledged he had authorized Tideline to charge the Lamborghini Card but claimed he had given limited authority only to the extent of the amount he believed Lamborghini Dallas owed him. Goldberg also testified that Tideline's receptionist waived his phone charges and that his initial reluctance to pay was only because of the phone charges. Finally, Goldberg testified that Tideline never attempted to charge the Kolta Card and the MasterCard Card was declined because Tideline attempted to charge it in an amount exceeding its limit.

The district court found Goldberg's testimony not credible based on its observation of Goldberg and his prior convictions for crimes of deceit. The district court discredited his testimony and credited the government's evidence. Based on the credited evidence, the court found that Goldberg did not violate Florida law and his supervision conditions by using the Lamborghini Card without authority. Among other factors, the court considered that Goldberg only successfully charged the approximately $1,000 deposit to the Lamborghini Card—an amount less than what Lamborghini Dallas owed him—and that Goldberg has used corporate credit cards in a similar manner in the past.

Even so, the court determined Goldberg violated Florida law and his terms of supervision by defrauding an innkeeper. Specifically, the court found that Goldberg did not provide the Mastercard Card at check-in. The court also found that Goldberg obtained lodging at Tideline with no ability to pay and with intent to defraud because Lamborghini Dallas only owed Goldberg $1,120, an amount dwarfed by the actual lodging fees he owed, and the Kolta Card was only authorized for incidental expenses.

At sentencing, the court found a Sentencing Guidelines range of 6 to 12 months but rejected the advisory range because of the seriousness of Goldberg's offense, his numerous prior crimes of deceit, and the serious financial risk he poses to the community. On the mitigation side, the court found that Goldberg committed no violation while on supervised release between 2016 and 2019. After weighing all the relevant factors, the court sentenced Goldberg to a 36-month term of imprisonment to be followed by two years of supervised release.

Goldberg claims the district court erroneously found he intentionally defrauded an innkeeper. "We review the district court's decision to revoke supervised release for an abuse of discretion" and any "subsidiary factfinding as to whether or not a violation occurred . . . for clear error." United States v. Black Bear, 542 F.3d 249, 252 (8th Cir. 2008) (citations omitted). "A defendant violates a mandatory condition of supervised release if he commits a federal, state, or local

crime." United States v. Asalati, 615 F.3d 1001, 1005 (8th Cir. 2010) (citation omitted). A person commits the offense of defrauding an innkeeper if he "obtains food, lodging, or other accommodations . . . with intent to defraud." Fla. Stat. § 509.151(1).

The district court committed no error, clear or otherwise, when it found Goldberg defrauded an innkeeper. The court reasonably credited the government's evidence suggesting Goldberg incurred thousands of dollars in hotel expenses after checking into Tideline using only the Lamborghini Card and the Kolta Card, neither of which were authorized to cover the full amount of Goldberg's lodging fees. The court also reasonably credited the government's evidence suggesting Goldberg furtively absconded from Tideline without providing a valid form of payment and subsequently made unfulfilled promises to pay. This evidence is more than sufficient to support a conclusion that Goldberg obtained lodging from Tideline without the ability to pay and with intent to defraud.

Goldberg asserts the court unreasonably disregarded evidence that he provided the MasterCard Card at check-in. The court could reasonably discredit Goldberg's self-serving testimony and find his proffered account statement unpersuasive considering the evidence that Tideline adjusted his account balance after he left Tideline. Goldberg also asserts the court's conclusion that he defrauded an innkeeper conflicts with its conclusion that he did not use a credit card without authority. However, the court could reasonably find that Goldberg had authority to charge the Lamborghini Card in an amount up to $1,120 while also finding this amount was insufficient to cover his extensive lodging fees.

As to Goldberg's claim that his sentence is substantively unreasonable, we review the substantive reasonableness of revocation sentences for an abuse of discretion. See United States v. Cain, 976 F.3d 778, 779-80 (8th Cir. 2020) (per curiam) (citations omitted). "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." United States v. Feemster, 572 F.3d 455,

464 (8th Cir. 2009) (en banc) (citation omitted). The district court's consideration of the applicable Sentencing Guidelines range, the seriousness of his offense, his extensive criminal history involving crimes of deceit, and the financial risk he presents to the community were all permissible sentencing factors. While Goldberg asserts the court should have more heavily weighed his prior successful performance on supervised release, the court acted within its wide sentencing discretion in finding this factor insignificant in comparison to the financial risk he poses to the public. See United States v. Anderson, 618 F.3d 873, 883 (8th Cir. 2010) ("The district court may give some factors less weight than a defendant prefers or more to other factors [without] justify[ing] reversal." (citation omitted)). The sentence is not substantively unreasonable.

For the foregoing reasons, we affirm the judgment of the district court.

_____