# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1296
_____

United States of America

*Plaintiff - Appellee*

v.

Marlin Santana Thomas

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: April 16, 2025
Filed: August 8, 2025
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

Marlin Santana Thomas pleaded guilty to a drug-distribution offense, served a 48-month sentence, and began his first term of supervised release in March 2023. His supervised release was revoked later that year, and he was sentenced to 24 months of incarceration and three years of supervised release. Soon after he began

his second term of supervised release, the district court[1] revoked his supervision again, this time sentencing him to 24 months of incarceration with five years of supervised release to follow. Thomas appeals this second revocation judgment. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In 2018, Thomas pleaded guilty pursuant to a plea agreement to conspiracy to distribute heroin, in violation of 18 U.S.C. §§ 841(a), 841(b)(1)(C), and 846. In 2020, near the end of Thomas's custodial sentence, the government separately charged him with multiple counts related to sex trafficking. Thomas was ordered detained on the new charges. Thomas later moved to dismiss the 2020 indictment as a breach of the "No Further Prosecution" clause in his prior plea agreement, which limited the government's ability to file additional charges against him. The district court largely denied the motion. Thomas pleaded guilty to six counts of sex trafficking adult victims by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(1) and (b)(1), but reserved the right to appeal the denial of his motion to dismiss. The district court sentenced Thomas to life imprisonment and a lifetime term of supervised release.

Thomas appealed and this court held that the "No Further Prosecution" clause in his prior plea agreement encompassed the sex trafficking charges filed in the 2020 case. See United States v. Thomas, 58 F.4th 964, 974–76 (8th Cir. 2023). We reversed the denial of Thomas's motion to dismiss and vacated his sex trafficking convictions. Id. at 977.

In March 2023, the district court ordered that Thomas be released from custody and temporarily modified his special conditions of supervision, which had been based on his 2018 drug conspiracy conviction. The district court stated it was

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

"likely to impose permanent additional special conditions . . . to ensure the safety of the community" given the "extensive evidence introduced at Thomas's 2021 sentencing hearing detailing the numerous women he trafficked, assaulted, and forcibly raped," much of which "w[as] not fully known to [the district court] in 2018."

The district court held a hearing in April 2023 to set final, modified conditions of supervised release. The court considered evidence filed in the 2020 sex trafficking case and noted that the filings "establish[ed] by a preponderance of the evidence . . . [t]hat between 2009 and 2018, the defendant trafficked by force and violence, including sexual violence in many cases, at least 19 women and children." The court imposed 20 conditions of supervised release, including, as relevant here, "GPS monitoring until further notice of the Court," a curfew, and a prohibition against contacting children without prior approval of the probation officer, including his children and grandchildren.

Thomas appealed, but before the appeal was resolved, his probation officer moved to revoke his supervised release. The district court held a revocation hearing in November 2023, during which Thomas stipulated to numerous violations. The district court revoked Thomas's supervision and sentenced him to 24 months in custody, with three years of supervised release to follow. The court, without objection from Thomas, reimposed the same conditions of supervision it had previously imposed in April 2023 and added several new ones. Thomas did not appeal.[2]

---

[2]As a result, this court granted the government's unopposed motion to dismiss as moot the April 2023 appeal.

Two weeks after Thomas began his second term of supervised release,[3] the probation office again sought to revoke his supervision. The district court held the second revocation hearing in February 2024. At the conclusion of the hearing, the court imposed a 24-month prison sentence and a five-year term of supervised release. This time, Thomas objected to several conditions of supervision, but the court reimposed the same conditions it had previously imposed, plus a few more.

Thomas appeals.

II.

Thomas challenges the district court's imposition of two special conditions of supervised release—location monitoring, via GPS and a curfew, and the prohibition of unapproved contact with minors.

We first address the government's argument that Thomas is procedurally barred from challenging the GPS monitoring condition because he failed to object when the condition was first imposed in April 2023. A defendant may not "collaterally attack the validity of [an] underlying sentence in an appeal of the revocation of . . . supervised release." United States v. Miller, 557 F.3d 910, 913 (8th Cir. 2009) (rejecting defendant's argument "that the [d]istrict [c]ourt erred in revoking his supervised release based on violations of [s]pecial [c]onditions . . . because those conditions were vague, ambiguous, and contrary to law," as defendant had not raised any objection to those conditions prior to the revocation proceedings). But that is not what is happening here. Instead, Thomas objected to the condition at the February 2024 revocation hearing as "greater than necessary" and the district court overruled the objection. A new judgment was entered that included the condition, and Thomas appeals this new judgment. There is no procedural bar to our review.

_____

[3]Thomas began his second term of supervision in December 2023, after serving only a few weeks of the 24-month sentence, because he had overserved his 2018 sentence and received credit for that time.

Turning to the merits, we review the court's imposition of the challenged conditions for abuse of discretion.[4] See United States v. Wilkins, 909 F.3d 915, 918 (8th Cir. 2018). "[A] district court is afforded wide discretion in imposing conditions of supervised release, so long as they meet the requirements of 18 U.S.C. § 3583(d)." United States v. Adams, 12 F.4th 883, 888 (8th Cir. 2021). Under § 3583(d),

> . . . any special condition: (1) "must be reasonably related to the nature and circumstances of the offense and the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs"; (2) cannot deprive the defendant of liberty "greater than reasonably necessary for the purposes of deterring criminal conduct, protecting the public from the defendant, and treating the defendant's correctional needs"; and (3) "must be consistent with pertinent Sentencing Commission policy statements."

Id. (quoting United States v. Mayo, 642 F.3d 628, 631 (8th Cir. 2011) (per curiam)).

The district court did not abuse its discretion by imposing the location monitoring program condition. Thomas argues that the condition is unnecessary and too great a deprivation of his liberty. But the district court explained that it imposed the condition because Thomas is "quite intelligent, quite manipulative, and sophisticated in his efforts to evade any supervision of him." The court noted that, during his time on supervision, Thomas committed "more than 300 violations of supervised release" and that he "ha[d] shown a complete unwillingness to be

---

[4]The government asserts that plain error review applies to the curfew requirement because Thomas did not specifically object to the curfew. The curfew was one component of a special condition that required participation in a Location Monitoring Program, which included both the use of "location monitoring equipment"—presumably the GPS—and a curfew. At the hearing, Thomas objected to "the location monitoring program," which he identified as "the second [special] condition." We are inclined to view Thomas's objection as sufficient to preserve abuse-of-discretion review, but we need not resolve this question because it makes no difference to the result.

monitored in the way that he needs to be monitored." See United States v. Johnson, 773 F.3d 905, 908 (8th Cir. 2014) (holding GPS monitoring was not "a greater deprivation of liberty than is reasonably necessary" for defendant who "was a serial violator of his supervised-release conditions," and had "failed to comply with the directives of and be truthful with his probation officer" because the monitoring "allow[s] the probation officer to verify [the defendant's] compliance with his location and travel restrictions"); United States v. Asalati, 615 F.3d 1001, 1008 (8th Cir. 2010) (upholding curfew where "the nature and extent of [the defendant's] prior crimes . . . demonstrate a continued and escalating inability to operate within the confines of the law," and "less restrictive release conditions have thus far been ineffective"). And though the district court imposed the condition "until further order of the [c]ourt," it left open the possibility of modifying the condition, explaining, "[w]e can transition him off [location monitoring and curfew requirements] if we see good compliance but for now we need to know where he is and what he's doing until he's earned, frankly, the trust that he needs to earn to go about his life without that supervision." See Johnson, 773 F.3d at 908–09 (affirming GPS monitoring for full, eight-year term of supervised release); Asalati, 615 F.3d at 1005, 1008 (affirming curfew imposed "until further order of the court" for defendant with lifetime supervised release term).[5]

We also conclude the district court did not abuse its discretion in imposing the condition forbidding unapproved contact with minors. Thomas argues that the condition unnecessarily restricts contact with his minor son, noting that he "has no history of sexual abuse of a family member." But "[w]e have repeatedly upheld no-contact orders requiring defendants to seek permission from a probation officer

---

[5]For the first time on appeal, Thomas also asserts that, "[t]o the extent that 24-hour GPS monitoring would track [his] presence and movements inside of his residence," the GPS monitoring infringes on his fundamental right to privacy in the home, but we find no factual support in the record for this surmise. See United States v. Thompson, 888 F.3d 347, 350 (8th Cir. 2018) (explaining that to obtain relief on plain error review, proponent must show, among other things, "that the district court made an obvious error").

before contacting their own minor children, even where there is no history or likelihood of abusive conduct." United States v. Jennings, 930 F.3d 1024, 1026–27 (8th Cir. 2019). In any case, here, the district court found that "the evidence that was presented in November of 2021 establishes that Defendant forcibly sex trafficked at least one child." See United States v. Simons, 614 F.3d 475, 481 (8th Cir. 2010) ("In many of our cases affirming no-contact conditions, we have cited a defendant's history of sexual abuse of minors as a factor in our decisions."). The district court also found that Thomas had a "long, violent history with the mother of [his minor son]." See Jennings, 930 F.3d at 1027 (pointing to the defendant's "long history of abusive conduct" with "adult family members" in affirming no-contact condition). And Thomas is permitted to have contact with his minor son so long as he receives prior approval from the probation office. See Simons, 614 F.3d at 482 (affirming a ban on contact with minors where a defendant "can still have contact with minors, including his own children, if he obtains permission from his probation officer"); Adams, 12 F.4th at 890 (explaining that bans permitting contact with approval from the probation officer "are generally more narrowly tailored to 'involve[] no greater deprivation of liberty than is reasonably necessary' to protect the public" (alteration in original) (quoting 18 U.S.C. § 3583(d)(2))).[6]

We affirm.

_____

---

[6]For these same reasons, we reject Thomas's constitutional argument, made for the first time on appeal, because the condition did not plainly violate his parental rights. See Thompson, 888 F.3d at 350.